**Cynthia CARTER, Plaintiff,**

v.

**GEORGE WASHINGTON UNIVERSITY, Defendant.**

**No. Civ.A.99–3134(RMU).**

United States District Court, District of Columbia.

Nov. 20, 2001.

Nathaniel Speights, III, Speights & Mitchell, Washington, DC, for plaintiff.

Karen Ann Khan, Khan Romberger, Inc., Arlington, VA, for defendant.

### MEMORANDUM OPINION

URBINA, District Judge.

GRANTING THE DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT

### I. INTRODUCTION

This employment-discrimination matter comes before the court upon the defendant's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(c). The plaintiff, Cynthia Carter, brought this suit alleging discrimination and retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e *et seq.*, the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, and 42 U.S.C. § 1981. The plaintiff also alleges constructive discharge and numerous

counts of breach of contract. For the reasons that follow, the court will grant the defendant's motion for summary judgment.

## II. BACKGROUND

The plaintiff, Cynthia J. Carter, Ed.D., is an African–American female who is over the age of 40. *See* Second Am.Compl. ("Compl.") ¶ 3. George Washington University ("GWU" or "the defendant"), is a private university located in the District of Columbia. *See id.* At all times relevant to her complaint, Dr. Carter was an employee of GWU, where she rose swiftly through the ranks, receiving three promotions in four years. She was hired as an Assistant Director of Marketing in the Division of Continuing Engineering Education (Grade 15), and was then promoted within the Division of Continuing Education/Off Campus Programs (Grade 17). *See id.* ¶¶ 7–8. Over time, Dr. Carter was promoted to Director of Regional Programs and Communications in the Office of Alumni Relations (Grade 19) and to Director of Reunions and Events in the Office of Alumni Relations (Grade 20). *See id* ¶¶ 10–12.

The plaintiff filed her original complaint on November 24, 1999. On December 5, 2000 the court granted the plaintiff leave to file her Second Amended Complaint, but struck the plaintiff's Count 20 in response to a motion by the defendant. *See* Mem. Op. (Dec. 15, 2000). On June 8, 2001, the defendant moved this court for summary judgment on the remaining 19 counts.

The court now lists the relevant details of Dr. Carter's experiences with GWU, organized according to her different claims.

### A. Failure to Promote

The plaintiff claims that the defendant failed to promote her on three occasions because of discrimination and/or retaliation: first, to the position of Executive Director of Alumni Relations; next, to the position of the Director of Development at Mount Vernon College; lastly, to the position of Director of Corporate and Foundation Relations. The court describes the facts surrounding each position separately.

#### 1. Executive Director of Alumni Relations

The Executive Director of Alumni Relations position became vacant in August 1997. *See* Worth Decl. ¶ 5; Compl. ¶ 15. Michael Worth, Vice President for Development and Alumni Affairs, appointed a search committee composed of GWU senior officials and active alumni to recommend candidates for the position. *See* Pl.'s Opp'n ¶ 17; Worth Decl. ¶ 6. Dr. Carter applied for the position in September 1997. *See* Compl. ¶ 16. Her application, and those of five others, were selected from almost 100 applications and forwarded to the Search Committee for further evaluation. *See id.;* Hall Decl. ¶ 10.

The Search Committee interviewed the remaining finalists and recommended four individuals for further consideration. *See* Hall Decl. ¶ 12. Dr. Carter was not one of the four recommended by the committee. *See id.;* Compl. ¶ 17. Michael Worth then interviewed the remaining candidates, and selected Keith Betts, a white male under the age of 40, to occupy the position of Executive Director of Alumni Relations.

All of the candidates selected by the committee were Caucasian, and at least two were under the age of 40. *See* Compl. ¶¶ 37, 42. The plaintiff alleges that the defendant discriminated against her on the basis of her race and age. *See* Compl. ¶ 43. The defendant counters that it rejected the plaintiff at this stage of the application process because of her lack of interviewing skills, lack of qualifications, and lack of experience. *See* Hall Decl.

¶ 12. The defendant further states that it selected the successful candidate, Keith Betts, because, among other reasons, he held a doctorate degree in Higher Administration and had recent success with the University's Young Alumni Program. *See* Worth Decl. ¶ 8; Hall Decl. ¶ 13.

The plaintiff learned of her non-selection on November 7, 1997, and the defendant announced Keith Betts as the new Executive Director in January 1998. *See* Def.'s Mot. for Summ.J.Ex. 11, Carter Equal Employment Opportunity Commission ("EEOC") Aff. After the announcement, the plaintiff approached a member of the committee, GWU's Director of Career Services, for professional advice. *See* Carter Dep. 145–46. The committee member then advised the plaintiff to consider a different interviewing style as a method for improving her professional prospects. *See id.*

### 2. Director of Development at Mount Vernon College

Mount Vernon College was a small, independent women's college in the District of Columbia that became affiliated with GWU in October 1996. In the fall of 1998, as the College made plans to close the following year, GWU planned to expand its offerings at the College and continued the College's focus on women's education. *See* Baxter Decl. ¶ 3. In March 1998, GWU posted a vacancy for the position of Director of Development at the new campus, describing the basic functions of this position as the "identification, cultivation, and solicitation of major gifts for programs of the school." Hall Decl.Ex. 8.

At this time, Graeme Baxter, Executive Dean of GWU Mount Vernon College, interviewed the plaintiff and two others. *See* Baxter Decl. ¶ 6. Dean Baxter concluded that the plaintiff was not qualified because she lacked experience working with major donors and also because she lacked

experience directing university fundraising. *See id.* The Dean also determined that the successful applicant, Sarah Morgan, was best qualified because she possessed experience at a women's college and previously had direct responsibility for development campaigns. *See id.* The plaintiff claims that the reasons offered by the defendant are a pretext for her non-selection, and that her race and age are the true reasons for her non-selection. *See* Compl. ¶¶ 49, 54.

### 3. Director of Corporate and Foundation Relations

In or around October 1998, GWU announced a vacancy for the position of Director of Corporate and Foundations Relations. *See* Hall Decl. ¶ 19. The position required the successful candidate to fundraise from corporations and foundations on a national level. *See id.* The plaintiff applied for the position, and her materials were forwarded to the independent search firm handling the search process, AST/Bryant. *See id.;* Carter Dep. at 165. Katherine White, of AST/Bryant, handled the GWU account and met with each of the three applicants. Ms. White determined that Dr. Carter was not a qualified candidate, and that she could not present Dr. Carter as an applicant for the position. *See* Hall Decl.Ex. 12; Carter Dep. at 171–2. The position was subsequently withdrawn for lack of qualified applicants. *See* Hall Decl. ¶ 23; Carter Dep. at 175. The plaintiff again claims that her race was the reason for her non-selection for this position. *See* Compl. ¶ 59.

### B. Reprisal

The plaintiff's reprisal claims are based on her non-promotion at GWU. According to the plaintiff, she filed an EEOC complaint on July 20, 1998, and received a negative evaluation in January 1999 in retaliation for the EEOC claims. *See*

Compl. ¶ 63. In January 1999, the plaintiff received the second-highest rating of "commendable overall." The plaintiff alleges that the defendant made negative comments in the "Performance Improvement Plan" section of the evaluation. *See* Carter Dep. at 219. The plaintiff complained about these comments and her supervisor, Mr. Betts, crossed them out and initialed the change. *See* Pl.'s Opp'n, Carter Aff.Ex. F at 9.

### C. Breach of Contract

The plaintiff alleges that she had a contract with the university based on the employment manual given to her during her employment. *See* Compl. ¶ 73. The defendant disagrees, noting that the George Washington University Manual of Personnel Policies contains the following disclaimer: "The personnel policies of the University do not constitute or reflect terms of a contract between the University and any employee...." Def.'s Mot. for Summ.J.Ex. 17. The manual also contains a statement of at-will employment: "... Employment at the University is not for a definite time and may be terminated at the will of the employee or the University at any time...." *Id.*

### D. Constructive Discharge

On or about February 23, 1999, the plaintiff submitted a letter of resignation from her position as the Director of Reunion and Events after being on medical leave for two months. *See* Def.'s Mot. for Summ.J.Ex. 8. In the letter, she expressed her appreciation for having the opportunity to work at GWU and also wished success to the Office of Alumni Relations. *See id.* The plaintiff now claims that she was constructively discharged because her doctor recommended that she not return to that department and the defendant refused to transfer her or grant her a leave of absence. *See* Pl.'s Opp'n, Carter Aff. ¶ 43. Five months before her resignation,

Dr. Carter applied for and held open an offer of employment at Howard University, where she is currently employed. *See id.* In January 2001, the plaintiff returned to GWU as a part-time adjunct professor to teach a course in women's studies. *See* Carter Dep. at 266–7.

### III. ANALYSIS

#### A. Legal Standard for Motion for Summary Judgment

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Diamond v. Atwood,* 43 F.3d 1538, 1540 (D.C.Cir.1995). To determine which facts are "material," a court must look to the substantive law on which each claim rests. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A "genuine issue" is one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action. *See Celotex,* 477 U.S. at 322, 106 S.Ct. 2548; *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505.

In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. *See Anderson,* 477 U.S. at 255, 106 S.Ct. 2505. A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position. *See id.* at 252, 106 S.Ct. 2505. To prevail on a motion for summary judgment, the moving party must show that the nonmoving party

"fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *See Celotex,* 477 U.S. at 322, 106 S.Ct. 2548. By pointing to the absence of evidence proffered by the nonmoving party, a moving party may succeed on summary judgment. *See id.*

In addition, the nonmoving party may not rely solely on allegations or conclusory statements. *See Greene v. Dalton,* 164 F.3d 671, 675 (D.C.Cir.1999); *Harding v. Gray,* 9 F.3d 150, 154 (D.C.Cir.1993). Rather, the nonmoving party must present specific facts that would enable a reasonable jury to find in its favor. *See id.* at 675. If the evidence "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249–50, 106 S.Ct. 2505 (internal citations omitted). Finally, the D.C. Circuit has directed that because it is difficult for a plaintiff to establish proof of discrimination, the court should view summary-judgment motions in such cases with special caution. *See Aka v. Washington Hosp. Ctr.,* 116 F.3d 876, 879–80 (D.C.Cir. 1997); *see also Johnson v. Digital Equip. Corp.,* 836 F.Supp. 14, 18 (D.D.C.1993).

**B. Discrimination Claims under Title VII, Section 1981, and the ADEA**

The plaintiff argues that the defendant discriminated against her on the basis of race and age by failing to promote her on three different occasions. *See generally* Compl. For each occasion, the plaintiff brings claims under the statutory authority of Title VII, Section 1981, and the ADEA. *See id.* ¶ 2. The plaintiff fails to meet her burdens under these statutes to the extent required in defending a motion for summary judgment. Accordingly, the court grants the defendant's motion for summary judgment on all counts of dis-criminatory failure to promote under Title VII, Section 1981, and the ADEA.

**1. Legal Standard: the *McDonnell Douglas* Framework**

Both Title VII and Section 1981 prohibit intentional discrimination based on race, and the ADEA prohibits discrimination based on age. *See* 42 U.S.C. § 2000e *et seq.;* 42 U.S.C. § 1981; 29 U.S.C. § 621 *et seq.* To prevail on a claim of discrimination brought pursuant to Title VII, a plaintiff must follow a three-part burden-shifting analysis. *See McDonnell Douglas v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The D.C. Circuit has held that the standards and order of proof in Section 1981 cases are identical to those governing Title VII disparate-treatment cases. *See Berger v. Iron Workers Reinforced Rodmen Local,* 843 F.2d 1395, 1412 n. 7 (D.C.Cir.1988) (citing *Carter v. Duncan–Huggins, Ltd.,* 727 F.2d 1225 (D.C.Cir.1984)). Similarly, the D.C. Circuit has utilized the Title VII framework to analyze discrimination claims brought pursuant to the ADEA: "that is, where direct evidence of discriminatory intent is not available, a party may establish unlawful age discrimination by relying on the familiar burden-shifting scheme first articulated in *McDonnell Douglas* . . . ." *Hall v. Giant Food, Inc.,* 175 F.3d 1074, 1077 (D.C.Cir.1999); *see also Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 140–43, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (applying the *McDonnell Douglas* framework to ADEA claims).

The Supreme Court explained the *McDonnell Douglas* three-part burden-shifting analysis as follows:

First, the plaintiff has the burden of proving by the preponderance of the evidence a *prima facie* case of discrimination. Second, if the plaintiff succeeds in proving the *prima facie* case, the burden shifts to the defendant 'to articu-

late some legitimate, nondiscriminatory reason for the employee's rejection.' Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination. . . . The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.

*Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 252–53, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) (quoting *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817 (citations omitted)). Thus, the plaintiff must first establish a prima-facie case of prohibited discrimination. *See McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817; *Aka v. Washington Hosp. Ctr.,* 156 F.3d 1284, 1288 (D.C.Cir.1998) (*en banc* ).

As a general matter, a prima-facie case for denial of a promotion based on race or age discrimination consists of the following elements: (1) the plaintiff is a member of a protected class; (2) the plaintiff applied for and was qualified for the position at issue; (3) despite the plaintiff's qualifications, the defendant rejected the plaintiff; and (4) the position was filled by a similarly qualified employee from outside the protected class. *See McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817; *Bundy v. Jackson,* 641 F.2d 934, 951 (D.C.Cir.1981). To demonstrate a prima-facie case of retaliation, the plaintiff must establish that: (1) the plaintiff was engaged in a protected activity; (2) the employer took an adverse personnel action against her; and (3) there is a causal link between the adverse action and the protected activity. *See Jones v. Washington Metro. Area Transit Authority,* 205 F.3d 428, 433 (D.C.Cir.2000).

If the plaintiff succeeds in making a prima-facie case, the burden shifts to the employer to articulate a non-discriminatory reason for its action. The employer's burden, however, is merely one of production. *See Burdine,* 450 U.S. at 254–55, 101 S.Ct. 1089. The employer "need not persuade the court that it was actually motivated by the proffered reasons. It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff." *Id.* If the employer is successful, the burden shifts back to the plaintiff to show that the defendant's proffered reasons are pretextual and that unlawful discrimination was the real reason for the action. *See McDonnell Douglas,* 411 U.S. at 802–05, 93 S.Ct. 1817; *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 508, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

The defendant's explanation of its legitimate reasons must be "clear and reasonably specific" so that the plaintiff is "afforded a full and fair opportunity to demonstrate pretext." *See Burdine,* 450 U.S. at 258, 101 S.Ct. 1089 (citation omitted). A subjective reason can be legally sufficient, legitimate, and nondiscriminatory if the defendant articulates a clear and reasonably specific factual basis on which it based its subjective opinion. *See id.* As the Eleventh Circuit has explained:

> [I]t might not be sufficient for a defendant employer to say it did not hire the plaintiff applicant simply because "I did not like his appearance" with no further explanation. However, if the defendant employer said, "I did not like his appearance because his hair was uncombed and he had dandruff all over his shoulders," or . . . "because he came to the interview wearing short pants and a T-shirt," the defendant would have articulated a "clear and reasonably specific" basis for its subjective opinion—the applicant's

bad (in the employer's view) appearance. That subjective reason would therefore be a legally sufficient, legitimate, nondiscriminatory reason for not hiring the plaintiff applicant.

*Chapman v. AI Transport,* 229 F.3d 1012, 1034 (11th Cir.2000) (*en banc* ).

Once the defendant carries its burden of articulating a "legitimate, nondiscriminatory reason" for the employee's rejection, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but rather were a pretext for discrimination. *See McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817. "That is, the plaintiff may attempt to establish that he was the victim of intentional discrimination 'by showing that the employer's proffered explanation is unworthy of credence' " and that the plaintiff's membership in a protected class was the true reason for the employment action. *See Reeves,* 530 U.S. at 142–44, 120 S.Ct. 2097 (quoting *Burdine,* 450 U.S. at 256, 101 S.Ct. 1089); *see also Aka,* 156 F.3d at 1290; *Mungin v. Katten Muchin & Zavis,* 116 F.3d 1549, 1554 (D.C.Cir.1997).

Both the Supreme Court and the D.C. Circuit have held that the burden-shifting scheme becomes irrelevant once both parties have met the burdens discussed above. *See Reeves,* 530 U.S. at 142–44, 120 S.Ct. 2097; *Aka,* 156 F.3d at 1289. At that point, the relevant inquiry is whether there is sufficient evidence from which a reasonable trier of fact could find in favor of the plaintiff, although "the trier of fact may still consider the evidence establishing the plaintiff's prima facie case and inferences properly drawn therefrom ... on the issue of whether the defendant's explanation is pretextual." *Reeves,* 530 U.S. at 142–44, 120 S.Ct. 2097 (citing *Burdine,* 450 U.S. at 255 n. 10, 101 S.Ct. 1089);

*see also Aka,* 156 F.3d at 1290; *Mungin,* 116 F.3d at 1554. In *Aka,* the D.C. Circuit concluded that the plaintiff had presented no evidence directly suggesting discrimination, but instead presented evidence that the defendant's proffered justification was false. The *Aka* court ruled that simply casting doubt on the employer's proffered justification did not automatically enable the plaintiff to survive summary judgment. *See Aka,* 156 F.3d at 1290–91. Rather, "the plaintiff's attack on the employer's explanation must always be assessed in light of the total circumstances of the case." *Id.* at 1291.

In sum, once an employer has met its burden of advancing a nondiscriminatory reason for its actions, the focus of proceedings at summary judgment:

> will be on whether the jury could infer discrimination from the combination of (1) the plaintiff's prima facie case; (2) any evidence the plaintiff presents to attack the employer's proffered explanation for its actions; and (3) any further evidence of discrimination that may be available to the plaintiff (such as independent evidence of discriminatory statements or attitudes on the part of the employer) or any contrary evidence that may be available to the employer (such as evidence of a strong track record in equal opportunity employment).

*Aka,* 156 F.3d at 1289.

In *Reeves,* the Supreme Court reaffirmed the principles set forth in *Aka.* Mandating a case-by-case approach, the Supreme Court instructed the district courts to examine a number of factors, including "the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports [or undermines] the employer's case." *Reeves,* 530 U.S. at 147–49, 120 S.Ct. 2097; *see also Aka,* 156 F.3d at 1289. Lastly, the D.C.

Circuit has recognized that courts "may not 'second-guess' an employer's personnel decision absent demonstrably discriminatory motive." *Fischbach v. D.C. Dep't of Corrections*, 86 F.3d 1180, 1183 (D.C.Cir. 1996) (citing *Milton v. Weinberger*, 696 F.2d 94, 100 (D.C.Cir.1982)); *see Marshall v. Federal Express Corp.*, 130 F.3d 1095, 1100 (D.C.Cir.1997); *Mungin*, 116 F.3d at 1556 (quoting *Fischbach*, 86 F.3d at 1183). "It is not enough … to disbelieve the employer; the fact finder must believe the plaintiff's explanation of intentional discrimination." *Reeves*, 530 U.S. at 147, 120 S.Ct. 2097 (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 519, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993)).

Because the standards of proof for the plaintiff's age and race discrimination claims are the same, the court will examine all claims under each failure to promote claim simultaneously.

## 2. Counts 2, 3, and 18: Failure to Promote to the Position of Executive Director of Alumni Relations

■ The plaintiff successfully demonstrates a prima-facie case under the *McDonnell Douglas* test for the claim of discriminatory failure to promote to position of Executive Director. A 47 year-old, African–American woman, the plaintiff is clearly a member of the two protected classes at issue: race and age. The plaintiff also demonstrates that she was qualified for the position of Executive Director. The job description lists the required qualifications and the plaintiff, through her resume and application, proves that she at least met the requirements. *See* Pl.'s Opp'n Exs. 7, 9. The defendant, through its search committee, rejected the plaintiff by not advancing her to the last round of consideration. *See* Compl. ¶ 17. Lastly, the defendant filled the position of Executive Director with Keith Betts, a white

male applicant under the age of 40 and younger than the plaintiff. *See id.*

■ Because the plaintiff can establish the prima-facie case, the defendant must offer legitimate, non-discriminatory reasons for not selecting the plaintiff for the position. The defendant asserts that the plaintiff was not selected because she lacked interviewing skills, qualifications, and experience. *See* Hall Decl. ¶ 12. The court determines that these reasons are sufficiently specific non race- or age-based reasons to satisfy the defendant's burden.

Under the *McDonnell Douglas* burden-shifting analysis, the burden now shifts back to the plaintiff to present enough evidence to allow a jury to infer discrimination. *See* 411 U.S. at 802, 93 S.Ct. 1817. The plaintiff fails here because she cannot prove that the "lack of interviewing skills" reason is pre-textual and cannot show evidence of discrimination.

The plaintiff attempts to demonstrate pretext by arguing that the defendant has no evidence showing that the plaintiff has poor interviewing skills. *See* Pl.'s Opp'n at 17–18. On the contrary, the plaintiff herself admits to consulting with the Director of Career Services, a member of the search committee, after the selection of the new Executive Director, and that the director advised the plaintiff that she needed to improve her interviewing skills. *See* Carter Dep. at 145–46. Also, the plaintiff concedes that the search committee did not discriminate against her, but she argues that the reason offered by the search committee is a pre-text for discrimination. *See* Pl.'s Answer to Interrogatories, no. 9. Because the evidence regarding the plaintiff's lack of interviewing skills is undisputed, the plaintiff does not demonstrate that this reason for non-selection is pretextual.

In addition, the plaintiff has failed to present any evidence of discrimination on the part of the defendant. The court notes

that in arguing this claim and other claims addressed by this opinion, the plaintiff relies solely on her affidavit in her attempt to survive summary judgment. The plaintiff had ample opportunity to conduct discovery and could have secured affidavits or declarations from the people whose statements she describes in her affidavit and uses to advance her argument. Additionally, the plaintiff could have deposed those witnesses adverse to her position to address any inconsistencies or ambiguities.

In conclusion, the plaintiff has failed to rebut all of the proper, non-discriminatory reasons offered by the defendant and has failed to present sufficient evidence of discrimination to permit a jury to infer discrimination. Therefore, the plaintiff's claims in Counts 2, 3, and 18 fail under the *McDonnell Douglas* analysis. Accordingly, the court grants summary judgment to the defendant on Counts 2, 3, and 18.

### 3. Counts 4, 5, and 16: Failure to Promote to the Position of Director of Development at Mount Vernon College

■ The plaintiff fails to make a prima-facie case of failure to promote to the Mount Vernon College position because she cannot establish the fourth prong of the *McDonnell Douglas* test for a prima-facie case: that she and the successful candidate were similarly qualified for the position. *See* 411 U.S. at 802, 93 S.Ct. 1817. The successful candidate, Sarah Morgan, possessed experience at a women's college and direct responsibility for development campaigns. *See* Baxter Decl. ¶ 7. Dean Graeme Baxter selected the successful candidate, and the plaintiff does not dispute that Dean Baxter determined that Sarah Morgan possessed the relevant experience necessary for this position and the plaintiff lacked this type of experience. *See id.*

Moreover, even if she could establish a prima-facie case, the plaintiff could not demonstrate that the defendant's legitimate non-discriminatory reason is pre-textual. The plaintiff does not even charge Dean Baxter with discriminatory intent. *See* Carter Dep. at 163; Pl.'s Answers to Def.'s First Set of Interrogs. No. 9. The defendant based its decision to select another candidate on Sarah Morgan's superior qualifications. Again, the plaintiff is in the untenable position of conceding that the decision-maker did not discriminate against her, while simultaneously arguing that the proffered reason for her non-selection (here, relative lack of experience) was a pretext for discrimination. *See* Pl.'s Opp'n at 23.

Significantly, the court notes that the plaintiff could have attempted to demonstrate that GWU's reasons are pretextual by showing its explanations "unworthy of credence." *See Reeves,* 530 U.S. at 142–44, 120 S.Ct. 2097 (quoting *Burdine,* 450 U.S. at 256, 101 S.Ct. 1089). Instead, the plaintiff attempts to show pretext by assailing the qualifications of the successful candidate Ms. Morgan. *See* Pl.'s Opp'n at 22–23. The plaintiff only supports her subjective assessment of Ms. Morgan's qualifications with the plaintiff's own affidavit. In the absence of "demonstrably discriminatory motive," courts "may not 'second-guess' an employer's personnel decision...." *Fischbach,* 86 F.3d at 1183. Moreover, the plaintiff offers only her lone affidavit as evidence to support her claim of discrimination. Accordingly, the court grants the defendant's motion for summary judgment for Counts 4, 5, and 16.

### 4. Counts 6 and 17: Failure to Promote to the Position of Director of Corporate and Foundation Relations

■ The plaintiff claims that the defendant failed to select her for the position of Director of Corporate and Foundation Relations on the basis of her race. *See* Compl. ¶¶ 59, 145. The plaintiff, however,

cannot establish a prima-facie case for discriminatory failure to promote to the position of Director of Corporate and Foundation Relations. Specifically, the plaintiff fails to satisfy the fourth prong of the *McDonnell Douglas* prima-facie case that the position was filled by a member outside of the protected class. *See* 411 U.S. at 802, 93 S.Ct. 1817. The evidence is undisputed that the position did not garner any applicants whom the defendant deemed qualified and, consequently, the defendant withdrew the position. *See* Carter Dep. at 175; Hall Decl. ¶ 23. The court therefore grants summary judgment to the defendant on Counts 6 and 17.

### 5. Count 7: Reprisal

■ The plaintiff claims that the defendant retaliated against her by failing to promote her to the positions of Director of Development at Mount Vernon College and Director of Corporate and Foundation Relations, and also by giving her a negative evaluation. As previously noted, to establish a prima-facie case of retaliation, the plaintiff must demonstrate that (1) she engaged in a protected activity; (2) the employer took an adverse personnel action against her; and (3) there is a causal link between the adverse action and the protected activity. *See McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817. The plaintiff clearly engaged in a protected activity on July 20, 1998 when she filed a complaint with the EEOC alleging discrimination by the defendant. Additionally, the plaintiff asserts that she made accusations of discrimination to Michael Worth in January 1998 before filing her complaint, and that activity is also protected.

In an alleged retaliatory failure-to-promote claim, the plaintiff must also show, as

part of the prima-facie case, that he or she was qualified for the position. *See Mitchell v. Baldrige,* 759 F.2d 80, 86 n. 5 (D.C.Cir.1985). The court rules that the plaintiff's reprisal claim on the basis of failure to promote to the Mount Vernon position must necessarily fail in consideration of its earlier holding that the defendant legitimately denied the plaintiff this promotion: the plaintiff has not shown that she was qualified for the position.

Even if the plaintiff could prove her qualifications for either of the director positions, the plaintiff also fails to establish a causal connection between her protected activity and her non-selection. For the Mount Vernon position, the plaintiff neither argues nor alleges facts demonstrating that Dean Baxter was aware that she had filed the EEOC complaint. Similarly, for the Corporate and Foundations position, the plaintiff does not demonstrate that Katherine White, from the independent search firm, was aware of the plaintiff's protected activities. Because the plaintiff fails to show that the deciding parties had knowledge of the plaintiff's earlier protected activities, the plaintiff has failed to show any means for a causal connection between the adverse action and the protected activity. *See Mitchell,* 759 F.2d at 86. Accordingly, the plaintiff cannot demonstrate that the defendant retaliated against her when it decided not to promote her to the positions of Director of Development and Director of Corporate and Foundation Relations.

■ The plaintiff also points to an alleged negative evaluation in 1998 as retaliation for her protected activities. Even if the evaluation could reasonably be read as a negative evaluation,[1] the plaintiff's

---

1. The court notes that the plaintiff received the highest possible score in two categories, and an overall rating of commendable, the second highest rating. In 1995, the plaintiff received the same overall rating. *See* Pl.'s Opp'n, Carter Aff.Exs. G, H.

claim of reprisal fails. A performance evaluation does not become an adverse action, thereby establishing a prima-facie case of discrimination and reprisal, simply because it is lower than the plaintiff thought she deserved. *See, e.g., Mack v. Strauss,* 134 F.Supp.2d. 103, 112–13 (D.D.C.2001); *Brown v. Bentsen,* 921 F.Supp. 1, 2 (D.D.C.1995); *see also Johnson v. City of Fort Wayne,* 91 F.3d 922 (7th Cir.1996) (holding that negative employment evaluations did not constitute adverse employment action). The evidence presented by the plaintiff on this matter is insufficient to support a claim of retaliation.

In conclusion, the court grants the defendant's motion for summary judgment as to the claims of reprisal in Count 7.

## C. Counts 1, 15: Pattern and Practice of Discrimination

The defendant correctly points out that the plaintiff does not defend these counts against summary judgment. The plaintiff fails in its opposition to allege material facts, disputed or undisputed, that would support a showing of a pattern and practice of discrimination. *See generally,* Pl.'s Opp'n. Based on this record, the court holds that the plaintiff has abandoned, and, therefore, conceded, these claims. *Cf.* LCvR 7.1(b). Accordingly, the court grants the defendant summary judgment on Counts 1 and 15.[2]

## D. Counts 9 through 14: Breach of Contract

In Counts 9 through 14, the plaintiff alleges that the defendant breached an implied employment contract on several grounds. Though the plaintiff did not have an explicit contract, she argues that the employee manual created an implied contract. The court disagrees. Accord-

ingly, the court grants summary judgment in favor of the defendant on these counts.

### 1. Legal Standard

District of Columbia law governs the creation of a contract executed within its borders. Section 1367(c) of the United States Code provides a federal court with supplemental jurisdiction over a plaintiff's state law claims that arise from the same facts as a federal claim before the court. *See* 28 U.S.C. § 1367(c) (1992). *See, e.g., United States ex rel. Yesudian v. Howard Univ.,* 153 F.3d 731, 745 (D.C.Cir.1998) (applying D.C. contract law in federal court) ("*Yesudian* ").

 In the District of Columbia, if there is no express contract or clause indicating the duration of the employment relationship then there is a presumption of at-will employment. *See Sisco v. General Servs. Admin.,* 689 A.2d 52, 53 (D.C.1997); *Yesudian,* 153 F.3d at 745. The District does recognize that an implied contract may arise from the language of an employee handbook or manual. *See Washington Welfare Ass'n, Inc. v. Wheeler,* 496. A.2d 613, 615 (D.C.1985). For an employee to claim the existence of an implied contract, however, the manual must contain "assurances by an employer in a personnel or policy manual distributed to all employees that are clear enough in limiting the right to terminate to specific causes or events." *Sisco,* 689 A.2d at 55. If the court believes such assurances exist, then the presumption against at-will employment is reversed, and an implied contract exists. *See id.* To overcome this reversal, a manual must contain "language clearly reserving the employee's right to terminate at will." *See id.* at 55; *Yesudian,* 153 F.3d at 746. Such language can negate the reasonableness of expecting the employer to

**2.** Insofar as Count 15 addresses other claims of discrimination under Section 1981, those claims are disposed of in earlier sections of this Memorandum Opinion.

perform on the promise of job security. *See Sisco*, 689 A.2d at 57.

## 2. Application

■ The parties agree that no express, written contract exists. *See* Carter Dep. at 193; Def.'s Mot. for Summ.J. at 40. Therefore, the court presumes the employment relationship is at will. To rebut this presumption, the manual must contain "assurances . . . limiting the right to terminate." *Sisco*, 689 A.2d at 55. The plaintiff does not point the court to any specific provisions in the employment manual that would serve as such assurances. *See generally* Pl.'s Opp'n. In fact, the plaintiff does not even provide the court with a copy of the manual that she claims is the basis for the defendant's breach of contract. Thus, the plaintiff fails to overcome the initial presumption of at-will employment.

Additionally, the defendant points to two pertinent clauses in its employment manual, First, the manual includes a disclaimer stating that "the personnel policies . . . do not constitute or reflect terms of a contract between the University and any employee." Def.'s Mot. for Summ.J.Ex. 17 at 3. Second, the manual states that "employment at the University is not for a definite time and may not be terminated at the will of the employee or the University at any time." *Id.* at 4. In each of the District of Columbia cases, deciding as a matter of law that the manual in question did not change the at-will employment relationship, the manual contained both a disclaimer of no contract and an express reservation of the right to terminate at will. *See Yesudian*, 153 F.3d at 747. Similarly, the manual in the present case, through the two clauses noted earlier, disclaims the existence of a contract and clearly reserves the University's right to terminate its employee at will. Such unequivocal language negates the reasonableness of the plaintiff's reliance on the University's manual for its promises of job security.

The plaintiff's failure to direct the court to areas of the manual providing specific assurances, coupled with the clear language in the manual reserving the right to terminate employees demonstrate that no implied contract was created by George Washington University's employment manual. Because no contract exists, the plaintiff's breach of contract claims must fail. Accordingly, the court grants the defendant's motion for summary judgment on Counts 9 through 14.

## E. Counts 8 and 19: Constructive Discharge

■ In examining the plaintiff's constructive discharge claims in Counts 8 and 19, the court must decide whether the working conditions in the plaintiff's workplace rose to a level of intolerableness that would have driven a reasonable person to resign. The defendants argue that the plaintiff's constructive discharge claim must fail because under the circumstances a reasonable person would not have felt compelled to resign. The court agrees and grants the defendant summary judgment on these counts.

■ An actionable constructive discharge claim requires a showing that (1) intentional discrimination existed, (2) the employer deliberately made working conditions intolerable, and (3) aggravating factors justified the plaintiff's conclusion that she had no option but to end her employment. *See Clark v. Marsh*, 665 F.2d 1168, 1173–74 (D.C.Cir.1981) (internal citations omitted). Thus, the issue here is whether the defendants created or condoned intolerable working conditions to such an extent that would have driven a reasonable person to resign. *See id.*

Here, the plaintiff's allegations of the defendant's failure to transfer or provide her a leave of absence are insufficient to support a claim of constructive discharge. The plaintiff must show that the defendant deliberately made her working conditions intolerable. *See id.* The parties do not dispute that the plaintiff was on medical leave for the two months prior to her resignation. The plaintiff, however, does not sufficiently explain why she could not return to her department. The hearsay evidence from the plaintiff's physician regarding the therapeutic value of a transfer is not enough. *See* Pl.'s Opp'n at 33–34. Even assuming that this evidence is true, it would simply demonstrate that another position in another department would have been preferable to the plaintiff.

The plaintiff's opposition and supporting affidavit are filled with further statements that the defendant told her she would never be promoted. *See* Pl.'s Opp'n, Carter Aff. ¶ Ex. U. However, self-serving affidavits alone will not protect the non-moving party from summary judgment. Additionally, the plaintiff undermines her own argument with her admission that she sought and held an offer of employment from Howard University for at least five months prior to her resignation. *See* Pl.'s Opp'n, Carter Aff. ¶ 43. The court also cannot overlook the fact that Dr. Carter returned to GWU less than a year later as an adjunct professor. *See* Carter Dep. at 266–7.

Because the plaintiff fails to demonstrate that the working conditions were so intolerable as to drive a reasonable person to resign, the court grants the defendant's motion for summary judgment on Counts 8 and 19.

## IV. CONCLUSION

For all these reasons, the court grants the defendant's motion for summary judgment on all 19 counts. An order directing the parties in a manner consistent with this Memorandum Opinion is separately and contemporaneously issued this 20 day of November, 2001.