# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued January 14, 2020   Decided March 17, 2020

No. 18-7167

KOLY CAMARA
APPELLEE

v.

MASTRO'S RESTAURANTS LLC,
APPELLANT

Appeal from the United States District Court
for the District of Columbia
(No. 1:18-cv-00724)

*Gerald L. Maatman, Jr.* argued the cause for appellant. With him on the briefs were *Rebecca S. Bjork* and *Alexander J. Passantino*.

*R. Andrew Santillo* argued the cause for appellee. With him on the brief were *Peter Winebrake*, *Mark J. Gottesfeld*, *Jason S. Rathod*, and *Nicholas A. Migliaccio*.

Before: HENDERSON and RAO, *Circuit Judges*, and RANDOLPH, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* RANDOLPH.

RANDOLPH, *Senior Circuit Judge*: This is an interlocutory appeal from an order of the district court denying a motion to compel arbitration. *See* 9 U.S.C. § 16(a)(1).

Koly Camara, a former server at Mastro's Steakhouse in Washington, D.C., sued Mastro's claiming that the company deprived him and other servers of a minimum wage in violation of the federal Fair Labor Standards Act and the District of Columbia's Minimum Wage Revision Act.

Mastro's moved to compel Camara to submit his claims to arbitration. The company's policy was to require its restaurant employees to sign an agreement to arbitrate any work-related legal disputes. But Mastro's was unable to produce a copy of an arbitration agreement bearing Camara's signature, or any other direct evidence of his assent to be bound by the policy. Camara submitted a sworn declaration stating that he had neither seen nor signed any arbitration agreement.

The Federal Arbitration Act provides that an arbitration clause in a contract "evidencing a transaction involving commerce" "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Before determining that the Act applies, the court must decide that the employee has agreed to arbitrate. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985).

The district judge, in a comprehensive opinion, correctly treated Mastro's motion as if it sought summary judgment under Federal Rule of Civil Procedure 56(c) with respect to the question whether Camara had agreed to arbitrate. *See Aliron Int'l, Inc. v. Cherokee Nation Indus., Inc.*, 531 F.3d 863, 865 (D.C. Cir. 2008). Under Rule 56(c), summary judgment is appropriate only if "there is no genuine issue as to any material

fact and . . . the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986) (quoting Fed. R. Civ. P. 56(c)).

As the party seeking to enforce an arbitration agreement, Mastro's had the burden of proving that Camara agreed to arbitrate. *See Bailey v. Fed. Nat'l Mortg. Ass'n*, 209 F.3d 740, 746 (D.C. Cir. 2000). Though unable to produce a copy of the agreement with Camara's signature, Mastro's believes that its two affidavits and "electronic evidence" showed that there is no genuine dispute about Camara's assent to be bound.

One affidavit was from Stephen Carcamo, the General Manager of Mastro's Steakhouse in D.C. Carcamo stated that the restaurant requires all of its employees to execute an arbitration agreement, that he "personally presented new hires and current employees with individual arbitration agreements" and "obtained their signatures, and that "virtually every Washington, D.C. Mastro's employee has signed an individual Arbitration Agreement." J.A. 27.

These statements provide some support for Mastro's claim. If the restaurant requires its employees to sign the agreements, and if "virtually every" employee has done so, then a jury could reasonably conclude that Camara signed an agreement too. But Carcamo's affidavit is notable for what it does not say. He did not state that he presented Camara a copy of the arbitration agreement, or that he witnessed Camara agreeing to its terms. Based on this, a reasonable jury could just as easily conclude that, while most employees signed the arbitration policy, Camara slipped through the cracks.

The second affidavit was from Laura Jasso, a human resources director who works for Mastro's parent company, Landry's. Jasso explained that Landry's operates a database that

tracks whether Mastro's employees across the country have signed arbitration agreements. She stated that on June 25, 2015, "the field corresponding to [Camara's] arbitration agreement was changed" by Mastro's personnel to affirm that Camara had signed the agreement. J.A. 35. Attached to Jasso's declaration was a printout of a database page showing Camara's employee profile. The page shows an "Arbitration Agreement" field, next to which a "Y" indicating "Yes" had been entered. J.A. 50. Jasso's affidavit and the database entry, like Carcamo's affidavit, bolster Mastro's position.

As against this evidence, Camara submitted an affidavit of his own. Under penalty of perjury, he stated that he "did not see that agreement when [he] worked at Mastro's, did not sign it, and . . . never agreed to its terms." J.A. 52. He added that he "never thought, or had reason to believe, that [he] gave up legal rights, including to a trial by jury, by working for Mastro's." *Id*.

Mastro's asks us to disregard, or at least discount, Camara's affidavit on the ground that Camara's sworn statements could not, without more, create a genuine factual dispute because they were "self-serving." In support, Mastro's invokes *Carter v. George Washington University*, 180 F. Supp. 2d 97, 111 (D.D.C. 2001). The district court's opinion in that case contains this sentence: "However, self-serving affidavits alone will not protect the non-moving party from summary judgment." *Id.* We reject that proposition as a rule of evidence or of law.

Of course Mastro's affidavit was "self-serving" in the respect that it supported his position. "Deposition testimony, affidavits, responses to interrogatories, and other written statements by their nature are self-serving." *Hill v. Tangherlini*, 724 F.3d 965, 967 (7th Cir. 2013). The Seventh Circuit held, and we agree, that "the term 'self serving' must not be used to denigrate perfectly admissible evidence through which a party

tries to present its side of the story at summary judgment." *Id.* at 967.

Thus, an "affidavit or declaration used to support or oppose a [summary judgment] motion must be made on personal knowledge" and "set out facts that would be admissible in evidence." Fed. R. Civ. P. 56(c)(4). Camara's affidavit satisfies these requirements. It may be that an affidavit lacking specific facts or support from the record is, by itself, insufficient to create a genuine factual issue. But it is the "conclusory allegations of [such] an affidavit," not its self-serving nature, that render it inadequate. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990).

Camara's declaration is specific enough. He stated that he "reviewed the form arbitration agreement" Mastro's attached to Carcamo's declaration but did not recognize it and did not sign it during the course of his employment. J.A. 52. There is not much more that Camara could reasonably be expected to assert in opposing Mastro's motion. The summary judgment standard does not require him to prove a negative. Rather, he needed only to offer evidence sufficient to create a genuine dispute about whether he agreed to be bound by the company's arbitration policy. He did so.

Mastro's also suggests that the only thing supporting Camara's position is his declaration. Not so. The company's failure to produce an arbitration agreement containing Camara's signature after the company searched for such a document makes it more likely that no such document exists, which in turn makes it less likely that Camara agreed to arbitrate disputes. In other words, the absence of a signed agreement in these circumstances is relevant evidence under Rule 401 of the Federal Rules of Evidence.

According to Mastro's, even if Camara did not sign the arbitration agreement, his conduct is sufficient to bind him to its terms. The company thus urges us to determine that an implied-in-fact arbitration contract existed between Mastro's and Camara. Both parties agree that District of Columbia law governs. Under D.C. law, an implied-in-fact contract contains "all necessary elements of a binding agreement," differing from other contracts "only in that it has not been committed to writing" and is instead "inferred from the conduct of the parties." *Boyd v. Kilpatrick Townsend & Stockton*, 164 A.3d 72, 81 (D.C. 2017) (citation and quotation marks omitted).

Unless Camara was aware that he was signaling an intent to be bound, Mastro's argument fails. *See* Restatement (Second) of Contracts § 19(2) (1981) (a party's conduct is not a manifestation of his assent unless "he intends to engage in the conduct and knows or has reason to know that the other party may infer from his conduct that he assents"). Nothing in the record negates Camara's sworn declaration that he was unaware of the agreement's existence and had no reason to believe he had relinquished his right to a trial. There is no evidence, for instance, that a manager or a co-worker discussed the arbitration agreement with him. In the absence of this or similar evidence, a reasonable factfinder could conclude that Camara was unaware of the agreement during the course of his work at Mastro's, and that he therefore had no reason to believe his continued employment could be seen as an intent to be bound by the agreement. At the least, there is a genuine issue of material fact about any implied contract.

For these reasons, we affirm the district court's denial of Mastro's motion to compel arbitration.

*So ordered.*