RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 21a0150p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

TIMOTHY BOYKIN,

               *Plaintiff-Appellant*,

    *v.*

FAMILY DOLLAR STORES OF MICHIGAN, LLC,

               *Defendant-Appellee*.

No. 20-1153

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:19-cv-10755—Gershwin A. Drain, District Judge.

Argued:  December 3, 2020

Decided and Filed:  July 1, 2021

Before:  ROGERS, NALBANDIAN, and MURPHY, Circuit Judges.

_____

## COUNSEL

**ARGUED:**  William G. Tishkoff, TISHKOFF PLLC, Ann Arbor, Michigan, for Appellant.
Emily M. Petroski, JACKSON LEWIS P.C., Southfield, Michigan, for Appellee.  **ON BRIEF:**
William G. Tishkoff, TISHKOFF PLLC, Ann Arbor, Michigan, for Appellant. Emily M.
Petroski, JACKSON LEWIS P.C., Southfield, Michigan, for Appellee.

_____

## OPINION

_____

MURPHY, Circuit Judge.  It has been almost a century since Congress enacted the
Federal Arbitration Act.  Yet this case suggests that the existing caselaw still leaves unclear how
a defendant should go about raising an arbitration defense in a pending suit.  Timothy Boykin
filed an employment suit against Family Dollar Stores.  Asserting that Boykin "e-signed" an

arbitration contract covering his claims, Family Dollar moved to compel arbitration and dismiss Boykin's complaint for improper venue under Federal Rule of Civil Procedure 12(b)(3). The district court instead treated the motion as one for failure to state a claim under Rule 12(b)(6). But it relied on substantial outside-the-complaint evidence, rejecting Boykin's sworn denial that he e-signed any contract as "self-serving." The court dismissed Boykin's suit and compelled arbitration.

We reverse. Although the Federal Arbitration Act requires a court to summarily compel arbitration upon a party's request, the court may do so only if the opposing side has not put the making of the arbitration contract "in issue." 9 U.S.C. § 4. The district court in this case should have evaluated whether Boykin adequately challenged the making of the contract using the standards that apply on summary judgment. And Boykin's evidence created a genuine issue of fact over whether he electronically accepted the contract or otherwise learned of Family Dollar's arbitration policy. Although his affidavit denying that he accepted the contract may have been "self-serving," that description alone does not provide a valid basis to ignore it.

I

Boykin is a 73-year-old African-American veteran. From 2003 to 2018, he worked in managerial roles for Family Dollar Stores of Michigan at stores located in Detroit and Ypsilanti. (Family Dollar Stores of Michigan has changed corporate form over the years. But these changes do not matter for our resolution, so we will refer to the corporate entities collectively as "Family Dollar.") Boykin eventually became the store manager of a Family Dollar store in Ypsilanti.

On July 8, 2018, a customer named Afshin Jadidnouri entered this store in search of a greeting card just two minutes before the store's 9:00 p.m. closing. After Boykin corralled the carts from outside, he claims that he politely asked Jadidnouri to make his final selection and proceed to the checkout line. According to Boykin, Jadidnouri responded in repulsive fashion: "Is that a Family Dollar policy or a N***er policy?" Compl., R.11, PageID 89. Boykin told him to leave. Jadidnouri allegedly retorted "f**k you," crumpled up a greeting card, and pushed Boykin. *Id.*, PageID 90. Boykin asked his assistant manager to call the police and escorted

Jadidnouri out. The police spoke separately with Jadidnouri and Boykin and told Boykin that the store had every right to exclude this customer from the premises.

Both Boykin and Jadidnouri later gave their sides of this encounter to Ron Durham, Family Dollar's operations manager for the area. When Durham met with Jadidnouri, the customer demanded that Family Dollar fire Boykin. Durham fired Boykin a few weeks later. When doing so, Durham confessed that he disagreed with the decision and handed Boykin an email from human resources. The email ordered Boykin's termination and instructed Durham to explain that the decision had been made after an investigation.

Boykin sued Family Dollar. His complaint alleged that the company fired him because of his age and race rather than the incident with Jadidnouri. Boykin asserted federal and state claims of race and age discrimination.

Family Dollar moved to compel arbitration and dismiss Boykin's suit at the pleading stage. In support, it introduced a declaration from Natalie Neely, a human-resources manager. Neely explained that Family Dollar employees must take online training sessions through "Family Dollar University," including a session about arbitration. When taking online courses, employees use their own unique ID and password. During the arbitration session, Neely explained, they must review and accept Family Dollar's arbitration agreement. The session states in all capital letters that, by clicking "I ACCEPT," each employee acknowledges that the employee has read the agreement, that the employee and the company are giving up their trial rights, and that they are agreeing to arbitrate disputes instead. The contract makes clear that it covers "all claims" against the company, including claims under the employment laws.

Family Dollar keeps records of when employees complete the arbitration session. According to Neely, the records showed that Boykin completed the session at 10:00:58 a.m. on July 15, 2013.

Boykin responded with an affidavit stating under oath that he "unequivocally" did not consent to or acknowledge an arbitration agreement on July 15, 2013 (or at any other time). Boykin added that he had no recollection of taking the arbitration session, that he did not have a certificate of completion for the session, and that no one ever told him that arbitration was a

condition of his employment.  After his termination, Boykin also requested his personnel file under Michigan law.  The records that Family Dollar provided did not include any arbitration agreement.

The district court granted Family Dollar's motion to compel arbitration and dismissed the suit.  It held that an arbitrator must resolve Boykin's claim that the parties had not entered into an arbitration agreement.  It alternatively found that the parties had, in fact, done so.

After the district court denied Boykin's motion to alter or amend the judgment, Boykin appealed.  We review the decision compelling arbitration de novo.  *See Great Earth Cos. v. Simons*, 288 F.3d 878, 888 (6th Cir. 2002).

II

The briefing in this case reveals confusion on a basic question: What procedures govern Family Dollar's motion to dismiss Boykin's suit and compel arbitration?  The Federal Arbitration Act provides the starting point for our answer because it supplants conflicting Federal Rules of Civil Procedure.  Fed. R. Civ. P. 81(a)(6)(B).  The Act provides two routes by which a party may invoke arbitration.  9 U.S.C. §§ 3–4.  Section 3 addresses motions arising in a case like this one in which a *defendant* seeks arbitration of "any issue" pending in an *existing* federal suit.  *Id.* § 3.  If a court is "satisfied that the issue involved in such suit . . . is referable to arbitration under" a written agreement, § 3 says, the court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement[.]" *Id.*

Section 3 might suggest that the district court should have stayed Boykin's suit, not dismissed it.  Some courts read the section's use of the word "shall" to mean that courts lack discretion to issue a dismissal when a party seeks a stay.  *See Katz v. Cellco P'ship*, 794 F.3d 341, 345–47 (2d Cir. 2015).  (A circuit split exists on this question; our unpublished cases have upheld dismissals.  *See id.*; *Anderson v. Charter Commc'ns*, __ F. App'x __, 2021 WL 2396231, at *4–5 (6th Cir. June 11, 2021).)  If Family Dollar had sought a stay, it would already be in arbitration.  A party generally may not immediately appeal a non-final decision that grants a stay pending arbitration, no matter how meritorious its claim of error.  9 U.S.C. § 16(b)(1); *Preferred*

*Care of Del., Inc. v. Estate of Hopkins*, 845 F.3d 765, 768 (6th Cir. 2017). But Family Dollar did not cite § 3 or adequately request a stay. It thus forfeited reliance on § 3 and its remedy. *Hilton v. Midland Funding, LLC*, 687 F. App'x 515, 519 (6th Cir. 2017). And Boykin may appeal the district court's final decision dismissing his suit in favor of arbitration. *Id.* at 518.

That leaves § 4. It allows a *plaintiff* to *file* a contract claim seeking the specific performance of an arbitration contract. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 7 (1983). The section states that a "party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under" a written arbitration agreement may "petition" a district court for an "order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. It then lists procedures to resolve this request. *Id.* Whether or not § 4's procedures expressly apply to a defendant like Family Dollar (rather than a plaintiff), the Supreme Court has called it "inconceivable" that the Act would change the rules "depending upon which party to the arbitration agreement first invokes the assistance of a federal court." *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 (1967). Besides, a defendant could always pursue a counterclaim seeking an injunction compelling arbitration under § 4 (not just a stay under § 3). The Act does not require this defendant (technically, a "counterclaim plaintiff") to file any formal pleadings because it tells courts to treat an application under § 4 as a motion. 9 U.S.C. § 6. So Family Dollar's motion is best read as one partially under § 4 because it sought to compel Boykin to arbitrate (although it also sought to dismiss Boykin's complaint and did not cite § 4).

What are § 4's procedures? The section allows the court to consider only narrow issues: those "relating to the making and performance of the agreement to arbitrate." *Prima Paint*, 388 U.S at 404. If, after hearing from the parties, the court is "satisfied that the making of the agreement" (or its breach) "is not in issue," the court "shall make an order" compelling arbitration. 9 U.S.C. § 4. If instead the court finds that the "making of the arbitration agreement" (or its breach) is "in issue," the court "shall proceed summarily to the trial" on the disputed question. *Id.* This text directs courts to act "summarily": they should resolve arbitration-related issues "as quickly and easily as possible." *Moses H. Cone*, 460 U.S. at 22. Yet it leaves the details unclear. How should a court decide whether a party has put the

agreement "in issue"?  If a party objects without evidence, must the court hold a trial?  If not, what rules govern whether the party should get one?

The Federal Rules of Civil Procedure fill in the gaps.  They "govern proceedings" "relating to arbitration" "to the extent" they are "applicable" and comport with the Federal Arbitration Act.  Fed. R. Civ. P. 81(a)(6)(B).  Here, the parties and district court diverged over which rules applied.  Family Dollar sought arbitration at the pleading stage, labeling its request as a motion to compel arbitration (impliedly under § 4) and to dismiss the suit for "improper venue" under Rule 12(b)(3).  Some circuits had suggested that a defendant may invoke an arbitration contract using this rule.  *See* 5B Arthur R. Miller et al., *Federal Practice and Procedure* § 1352, at 318–19 & n.5 (3d ed. 2004 & Supp. 2021) (citing circuit split).  The Supreme Court, however, jettisoned this approach when addressing contractual forum-selection clauses.  It clarified that venue is "proper" under Rule 12(b)(3) as long as the venue *laws* permit the plaintiff to sue in the chosen court, whether or not that choice comports with the parties' *contractual* forum.  *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for the W. Dist. of Tex.*, 571 U.S. 49, 55–57 (2013).  This holding shows that parties should not use Rule 12(b)(3) to raise an arbitration agreement—a type of forum-selection clause.  *See City of Benkelman v. Baseline Eng'g Corp.*, 867 F.3d 875, 880 (8th Cir. 2017).

Unlike Family Dollar, the district court cited Rule 12(b)(6)'s standards for a motion to dismiss the complaint for failure to state a claim.  Other circuits have noted that a defendant seeking arbitration may sometimes use this rule.  *See Guidotti v. Legal Helpers Debt Resol., L.L.C.*, 716 F.3d 764, 773–74 (3d Cir. 2013).  But this motion seeks a remedy (dismissal) that the Federal Arbitration Act does not provide.  *See United States ex rel. Dorsa v. Miraca Life Scis., Inc.*, 983 F.3d 885, 887–88 (6th Cir. 2020).  The motion does not seek a stay of the suit (the remedy in § 3) or an injunction compelling arbitration (the remedy in § 4).  *Id.* at 887.  Perhaps an arbitration contract could be seen as an affirmative defense to suit in a judicial forum.  *Cf. Kulukundis Shipping Co., S/A v. Amtorg Trading Corp.*, 126 F.2d 978, 988 (2d Cir. 1942) (analogizing to "plea in bar").  And perhaps a defendant could rely on Rule 12(b)(6) alone if it thinks dismissal is proper.  *Cf. Atl. Marine Constr.*, 571 U.S. at 61.

Yet we need not take a position on these issues because the district court should not have used Rule 12(b)(6) in this case regardless. That rule requires courts to stick to the complaint's allegations. *Bates v. Green Farms Condo. Ass'n*, 958 F.3d 470, 483 (6th Cir. 2020); *Guidotti*, 716 F.3d at 773–74. The court instead relied on substantial outside-the-complaint evidence, including Neely's declaration averring that Boykin had electronically acknowledged the arbitration contract. Although Boykin testified that he had not done so, the court found that his "self-serving" evidence did not "create a dispute of fact." The court's language suggests that it treated Family Dollar's motion to compel arbitration like one for summary judgment under Rule 56 (in substance if not in name). *Cf.* Fed. R. Civ. P. 12(d); *Bates*, 958 F.3d at 484.

This analogy to summary judgment provides the right way to assess a motion to compel arbitration under § 4. The question whether the party opposing arbitration has put the making of the arbitration contract "in issue" looks a lot like the question whether a party has raised a "genuine issue as to any material fact." Fed. R. Civ. P. 56(c) (1938). So we and many courts have held that Rule 56's standards govern whether a court should hold a trial under § 4 when a party alleges that no contract exists. *See Great Earth*, 288 F.3d at 889; *Camara v. Mastro's Rests. LLC*, 952 F.3d 372, 373 (D.C. Cir. 2020); *Burch v. P.J. Cheese, Inc.*, 861 F.3d 1338, 1346 (11th Cir. 2017); *Neb. Mach. Co. v. Cargotec Sols., LLC*, 762 F.3d 737, 741–44 (8th Cir. 2014); *Howard v. Ferrellgas Partners, L.P.*, 748 F.3d 975, 978 (10th Cir. 2014); *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 735 (7th Cir. 2002); *Interbras Cayman Co. v. Orient Victory Shipping Co., S.A.*, 663 F.2d 4, 7 (2d Cir. 1981) (per curiam). (A party generally may file this motion "at any time until 30 days after the close of all discovery." Fed. R. Civ. P. 56(b).)

III

A

This procedural clarification brings us to the central question: Did Boykin adequately put in "issue" whether he accepted the arbitration contract under Rule 56's standards? The parties do not dispute several legal principles embedded in this question (and we thus assume them on appeal). They do not dispute that § 4 applies to the purported arbitration contract because it falls within the Act's scope. *Cf. New Prime Inc. v. Oliveira*, 139 S. Ct. 532, 537–38 (2019). They do

not dispute that Michigan law governs whether they formed a contract. *Cf. Tillman v. Macy's Inc.*, 735 F.3d 453, 456 (6th Cir. 2013). They do not dispute that Michigan law allowed Boykin to accept the contract by electronically acknowledging it during the training session. *Cf. Hall v. Pac. Sunwear Stores Corp.*, 2016 WL 1366413, at *5–6 (E.D. Mich. Apr. 6, 2016). And they do not dispute that Michigan law allowed Boykin to alternatively accept the contract through his continued employment as long he had adequate notice of it. *Compare Tillman*, 735 F.3d at 460, *with Hergenreder v. Bickford Senior Living Grp., LLC*, 656 F.3d 411, 418–19 (6th Cir. 2011). This appeal thus turns only on whether Boykin accepted the contract *either* by electronically acknowledging it *or* by continuing to work for Family Dollar after learning of it.

Under Rule 56, Family Dollar had the initial duty to present evidence that would allow a trier of fact to find all required elements of a contract (including Boykin's acceptance) because it bore the burden of proof on its contract claim under § 4. *See Hergenreder*, 656 F.3d at 417; *Camara*, 952 F.3d at 373; 10A Mary Kay Kane, *Federal Practice and Procedure* § 2727.1, at 485 (4th ed. 2016). Family Dollar met this burden. It introduced a declaration from Neely, the human-resources manager, indicating that the company required employees to take the Family Dollar University's arbitration session and to read and accept the arbitration agreement that Neely attached to her declaration. Neely Decl., R.26-2, PageID 571–74. Neely also attached what she said was one page from Boykin's Family Dollar University records suggesting that he had completed the session on July 15, 2013. *Id.*, PageID 574; Records, R.26-2, PageID 588. And Boykin obviously does not dispute that he continued working for Family Dollar thereafter.

What must Boykin show in response to establish a "genuine" dispute over whether he accepted the contract? Fed. R. Civ. P. 56(a). He needed to present "specific facts, as opposed to general allegations," that would allow a rational trier of fact to find that he did not acknowledge the agreement or learn about the arbitration condition of employment in other ways. *Viet v. Le*, 951 F.3d 818, 823 (6th Cir. 2020) (quoting 10A Kane, *supra*, § 2727.2, at 501). Boykin attempted to meet this burden primarily with an affidavit denying that he had accepted the contract or received notice of Family Dollar's arbitration policy. His response implicates a recurring question about what kinds of "denials" create a genuine dispute of fact.

Decisions that have addressed this question provide helpful guideposts. On the one hand, convenient memory lapses do not create factual disputes that are genuine. *See, e.g.*, *Fed. Home Loan Mortg. Corp. v. Anchrum*, 782 F. App'x 782, 786 n.11 (11th Cir. 2019); *Genger v. Genger*, 663 F. App'x 44, 49 n.4 (2d Cir. 2016); *Mucha v. Village of Oak Brook*, 650 F.3d 1053, 1056 (7th Cir. 2011); *Provident Life and Accident Ins. Co. v. Goel*, 274 F.3d 984, 993–94 (5th Cir. 2001); *Hatfield v. Occidental Chem. Corp.*, 1988 WL 25249, at \*4 (4th Cir. Mar. 21, 1988). A party thus cannot expect to obtain a trial under § 4 simply by testifying that the party does not "remember" signing an arbitration contract or receiving information about arbitration. Consider *Tinder*. There, Ilah Tinder argued that she had not accepted arbitration through her employment with Pinkerton Security because she did not receive the materials announcing the arbitration policy. 305 F.3d at 735. But Pinkerton's evidence showed that the materials were "definitely sent" to Tinder. *Id.* at 736. Her contrary evidence—an affidavit stating that she did not "recall" getting them—did not create a *genuine* dispute over whether she had done so. *Id.*; *see also Almacenes Fernandez, S. A. v. Golodetz*, 148 F.2d 625, 628 (2d Cir. 1945).

On the other hand, an "unequivocal denial" that takes the form of admissible "evidence" can create a genuine dispute of fact. *Interbras Cayman*, 663 F.2d at 7 (citation omitted). After all, courts must review factual conflicts "in the light most favorable to the opposing party." *Tolan v. Cotton*, 572 U.S. 650, 656–57 (2014) (per curiam) (citation omitted). So a party might be able to obtain a trial under § 4 with a sworn denial that the party ever signed an arbitration agreement or received arbitration materials. *See Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 161–62 (3d Cir. 2009). Consider *Camara* as a counterpoint to *Tinder*. There, Mastro's Steakhouse required its employees to sign arbitration agreements but failed to produce an agreement in a suit with one employee, Koly Camara. *See Camara*, 952 F.3d at 373. A manager instead testified that "virtually every" employee must sign the agreement, and a human-resources director added that Camara's personnel records showed that he had, in fact, done so. *Id.* at 374. Camara, though, testified that he had not seen or signed the agreement and was not aware of any arbitration policy. *Id.* The court found that this conflicting evidence necessitated a trial under § 4. *Id.* at 374–75.

This case is close because Boykin's evidence falls between the evidence in *Tinder* and *Camara*. At times, Boykin testified that he does not "have knowledge or recollection" of accepting the arbitration contract or taking the arbitration session. Boykin Aff., R.29-2, PageID 917, 919. A claim that he does not recall doing so *by itself* may have fallen short. *Tinder*, 305 F.3d at 736. Yet Boykin said more. Subject to the penalties for perjury, he flatly denied accepting an arbitration contract on July 15, 2013: "I unequivocally did not consent to, sign, acknowledge or authorize any type of arbitration agreement with [Family Dollar] on or after July 15, 2013, or at any time." Boykin Aff., R.29-2, PageID 918. He also flatly denied receiving information about arbitration: "I was not informed by [Family Dollar] that I was required to enter into an arbitration agreement as a condition of my employment." *Id.*, PageID 919. As in *Camara*, this evidence creates a factual dispute over whether Boykin authorized the arbitration contract or learned of Family Dollar's arbitration policy in other ways. 952 F.3d at 374–75; *cf. Burch*, 861 F.3d at 1342–43, 1346.

Some circumstantial evidence also supports Boykin's denials. For one thing, Boykin requested his "personnel records" from Family Dollar—something he had a right to do under Michigan law. *See* Mich. Comp. Laws §§ 423.503–04. Even though Family Dollar told him that it had provided "all available records," it did not produce any arbitration-related records. The "absence" of these materials from Boykin's personnel file offers some relevant evidence supporting him. *Cf. Camara*, 952 F.3d at 375. While Family Dollar conclusorily asserts in a footnote that the arbitration contract does not qualify as a "personnel record," Mich. Comp. Laws § 423.501(2)(c), it offers no explanation why that is so.

For another thing, a Family Dollar lawyer contacted Boykin after he filed suit claiming that Boykin entered into a different arbitration contract when he was hired back in 2003. Family Dollar forthrightly acknowledges that the lawyer "inadvertently" attached the wrong contract and mistakenly indicated that Boykin had accepted this contract at the time of his hiring. Yet Family Dollar's own initial confusion over which agreement is allegedly at issue likewise supports Boykin's claim that Family Dollar had mistakenly identified him as having consented to any arbitration agreement at all.

The confusion from Family Dollar's records also illustrates a discovery-related point. Courts have recognized that a party who adequately puts the formation of an arbitration contract in issue may request discovery on that contract-formation question.  *See Guidotti*, 716 F.3d at 775–76 & n.5; *Deputy v. Lehman Bros., Inc.*, 345 F.3d 494, 511 (7th Cir. 2003); *cf.* Fed. R. Civ. P. 56(d).  Here, however, the district court dismissed Boykin's suit at the pleading stage and barred him from seeking discovery on this contract-formation question.  To support his claim that the company's records were mistaken, however, Boykin sought discovery into, among other things, the one-page document that Family Dollar produced listing his completion of the arbitration session.  *Cf. Interbras*, 663 F.2d at 7.  Boykin was at least entitled to targeted discovery on this contract-formation question.  (Family Dollar makes no claim that Boykin should have requested discovery under the process in Rule 56(d), so we need not consider the issue.)

In sum, Boykin has identified a genuine dispute of fact over whether the parties have formed a contract—a dispute that entitles him to targeted discovery and a trial on the question.

B

Family Dollar's responses fail to convince us otherwise.  *First*, Family Dollar calls Boykin's flat denial of accepting the arbitration contract "self-serving."  Why does that matter? Are we allowed to consider Boykin's evidence only if it "served" Family Dollar?  And was Family Dollar's evidence any less "self-serving"?  As courts have explained, parties should avoid this "self-serving" label because it does nothing to undermine the other side's evidence under Rule 56.  *See Davis v. Gallagher*, 951 F.3d 743, 750 (6th Cir. 2020); *Gresham v. Meden*, 938 F.3d 847, 850 (6th Cir. 2019); *Harris v. J.B. Robinson Jewelers*, 627 F.3d 235, 239 (6th Cir. 2010); *see also Camara*, 952 F.3d at 374; *Hill v. Tangherlini*, 724 F.3d 965, 967–68 & n.1 (7th Cir. 2013); 11 James W. Moore et al., *Moore's Federal Practice* § 56.94[3], Lexis (database updated 2021).

If anything, the self-serving claim disserves the party who uses it because it often distracts from valid concerns with the challenged evidence.  As one example, plaintiffs in employment cases generally cannot defeat summary judgment by testifying to their "personal

belief" that they were discriminated against after an employer offers a valid reason for the relevant employment decision. *Watson v. City of Cleveland*, 202 F. App'x 844, 854 (6th Cir. 2006). Yet such an affidavit fails to create a genuine dispute not because it is self-serving but because employees usually lack *personal knowledge* about the employer's intent. *See Mitchell v. Toledo Hosp.*, 964 F.2d 577, 584 (6th Cir. 1992); Fed. R. Civ. P. 56(c)(4). In this case, however, Family Dollar cannot claim that Boykin lacked personal knowledge over whether he completed the arbitration session.

Likewise, employees cannot defeat summary judgment over whether, say, they were qualified for a position simply by filing an affidavit stating the bare conclusion that they were "qualified." *See Viet*, 951 F.3d at 823. Here again, such an affidavit fails to create a genuine dispute not because it is self-serving but because it is *conclusory*. *Id.*; *Alexander v. CareSource*, 576 F.3d 551, 559–60 (6th Cir. 2009). A party must present specific evidence that would allow a rational jury to find for the party on a fact; bare legal conclusions will not do. *See Viet*, 951 F.3d at 823. Yet Boykin's flat denial was "specific enough" to put in issue whether he acknowledged the arbitration contract during a training session on July 15, 2013, and Family Dollar does not identify what else he should have said. *Camara*, 952 F.3d at 375. "The summary judgment standard does not require him to prove a negative." *Id.*; *see Kirleis*, 560 F.3d at 161–62.

Or consider undisputed video evidence. When it shows that a party was driving recklessly during a high-speed chase, that party could not defeat summary judgment with an affidavit stating that the party was driving carefully. *See Scott v. Harris*, 550 U.S. 372, 378–80 (2007). For a third time, though, such an affidavit fails to create a genuine dispute not because it is self-serving but because it "is blatantly and demonstrably false." *Davis*, 951 F.3d at 750. Yet Family Dollar's one-page document allegedly recording Boykin's completion of the arbitration session does not suffice for us to characterize his sworn denial of that fact as "blatantly false." That is especially so because Boykin has not had any opportunity to seek discovery about this document.

*Second*, Family Dollar invokes our "sham affidavit" rule. This rule provides that a party cannot create a genuine dispute of material fact with an affidavit that conflicts with the party's earlier testimony about the fact. *See, e.g.*, *France v. Lucas*, 836 F.3d 612, 622–24 (6th Cir.

2016); *United States ex rel. Compton v. Midwest Specialties, Inc.*, 142 F.3d 296, 302–03 (6th Cir. 1998); *Reid v. Sears, Roebuck and Co.*, 790 F.2d 453, 460 (6th Cir. 1986).   We have suggested that the rule can apply in two situations. *See Aerel, S.R.L. v. PCC Airfoils, L.L.C.*, 448 F.3d 899, 908–09 (6th Cir. 2006).   It can apply when a witness's affidavit "directly contradicts" the witness's prior testimony. *Id.* at 908.   And even without a direct contradiction, it can also apply when the witness's affidavit is in tension with that prior testimony as long as the circumstances show that the party filed the affidavit merely to manufacture "a sham fact issue." *Id.* (citation omitted).

Family Dollar seeks to invoke this sham-affidavit rule because Boykin's flat denials came in a second affidavit; his first affidavit indicated only that he had no knowledge or recollection of acknowledging the arbitration contract.   Yet the district court did not reject Boykin's affidavit under this rule, and we normally review the rule's use for an abuse of discretion. *See, e.g.*, *Reich v. City of Elizabethtown*, 945 F.3d 968, 975 (6th Cir. 2019).   Regardless, Family Dollar's appellate briefing fails to show that the rule should apply.   Contrary to its claim, nothing in Boykin's second affidavit "directly contradicts" his first one. *Aerel*, 448 F.3d at 908; *see Reich*, 945 F.3d at 976.   Both affidavits note that Boykin has no recollection of accepting the contract; the second affidavit simply takes the next step by clarifying that he categorically denies doing so as well.   The sham-affidavit rule might well have applied if Boykin had stated that he could not recall accepting the contract during a deposition in which Family Dollar "directly questioned" him about whether he was denying doing so outright or stating only that he could not remember either way. *Aerel*, 448 F.3d at 907.   In that scenario, Family Dollar's exhaustive questioning would have given further content to Boykin's testimony regarding his lack of knowledge and perhaps created a direct conflict.   But Boykin's back-to-back affidavits are a far cry from that more common use of the sham-affidavit rule. *Id.*; *cf. Crawford v. Chipotle Mexican Grill, Inc.*, 773 F. App'x 822, 825–26 (6th Cir. 2019).

In addition, Family Dollar does not attempt to establish in the alternative that Boykin's second affidavit is in tension with his first one and that he sought to use it to "create a sham fact issue" for trial. *Aerel*, 448 F.3d at 908 (quoting *Franks v. Nimmo*, 796 F.2d 1230, 1237 (10th Cir. 1986)).   If anything, Boykin's second affidavit appears to represent his "attempt[] to

explain" that he does not simply fail to recollect signing the arbitration contract but affirmatively denies doing so. *Id.* at 909. Such a decision to "supplement[]" potentially ambiguous or incomplete testimony does not represent an attempt to create a faux fact issue. *Id.* at 907. We thus see no basis in our sham-affidavit rule to disregard his sworn denial of acknowledging the contract.

*Third*, Family Dollar argues (and the district court held) that the arbitration contract leaves this question whether Boykin assented to arbitration for the arbitrator to decide. Family Dollar is correct that the contract states that an arbitrator shall resolve any controversy over the agreement's "formation." Agreement, R.26-2, PageID 584. Family Dollar is also correct that parties may agree to have the arbitrator resolve "gateway" issues that are preliminary to the merits of the plaintiff's claims—such as whether their arbitration contract even covers those claims. *See, e.g.*, *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019); *Rent-A-Ctr., West, Inc. v. Jackson*, 561 U.S. 63, 68–70 (2010). But Family Dollar stretches this rule too far by arguing that it covers even whether Boykin agreed to arbitrate at all. A party's right to a judicial forum represents the default rule; the duty to arbitrate arises only from the party's consent. *See Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1415–17 (2019). So parties cannot be forced into an arbitral forum unless they actually agreed to arbitrate. And courts must confirm that they did so before shipping the dispute to arbitration—as § 4's procedures make plain. *See Sevier Cnty. Sch. Fed. Credit Union v. Branch Banking & Tr. Co.*, 990 F.3d 470, 475 (6th Cir. 2021); *VIP, Inc. v. KYB Corp.* (*In re Auto. Parts Antitrust Litig.*), 951 F.3d 377, 382–83 (6th Cir. 2020); *see also Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 n.1 (2006).

Does it change things, though, that Family Dollar's specific "agreement" with Boykin suggests that they left any dispute over the contract's "formation" for the arbitrator? Not at all. Suppose a defendant sought to compel a plaintiff into arbitration by independently drafting a document stating that the parties agreed to arbitrate. Could the defendant force the plaintiff into arbitration through this unilateral action simply by adding a term that the parties also agreed to arbitrate the question whether the one-sided document counts as a "contract"? Of course not. Yet that is essentially what Family Dollar asks us to do here. After all, Boykin has testified that

he did not enter into this particular term of the contract just as much as he claims he did not enter into any other term. The courts instead must decide this formation question—regardless of what the (alleged) contract says. *See MZM Constr. Co. v. N.J. Bldg. Laborers Statewide Benefit Funds*, 974 F.3d 386, 396–402 (3d Cir. 2020). To argue the contrary, Family Dollar mistakenly relies on *Rent-A-Center*. There, the Supreme Court expressly disclaimed any suggestion that its holding would require arbitration of the question whether the parties formed a contract. *Rent-A-Center*, 561 U.S. at 70 n.2.

*Fourth*, Family Dollar cites several of our cases holding that an employee accepted an arbitration contract under state law by continuing to work for a company when the company made the employee's acceptance a condition of continued employment. *See Tillman*, 735 F.3d at 456–62; *Dawson v. Rent-A-Ctr., Inc.*, 490 F. App'x 727, 730 (6th Cir. 2012); *Seawright v. Am. Gen. Fin. Servs., Inc.*, 507 F.3d 967, 971–74 (6th Cir. 2007). In each of these cases, however, undisputed evidence showed that the employee had learned that accepting arbitration was a condition of the employee's continued employment. *See Tillman*, 735 F.3d at 455; *Dawson*, 490 F. App'x at 728–29; *Seawright*, 507 F.3d at 971. Here, Boykin unequivocally denies taking the arbitration training session, and Family Dollar has offered no other evidence showing that he learned of this arbitration condition in other ways. And again, Family Dollar does not dispute on appeal that Michigan law required Boykin to know that his acceptance of arbitration had been made a condition of his continued employment.

\* \* \*

Where does our conclusion that a fact dispute exists leave things? The Federal Arbitration Act requires the district court to "proceed summarily to the trial" of the disputed fact questions. 9 U.S.C. § 4. The parties may not address other issues, including merits issues, before the court resolves these formation questions and Family Dollar's motion to compel. *See Jin v. Parsons Corp.*, 966 F.3d 821, 826–27 (D.C. Cir. 2020); *Silfee v. Automatic Data Processing, Inc.*, 696 F. App'x 576, 577–78 (3d Cir. 2017). In the meantime, the court should hold its motion in abeyance. *See Jin*, 966 F.3d at 827–28; *cf. Howard*, 748 F.3d at 978. The parties may seek targeted discovery on the disputed contract-formation questions. *See Guidotti*, 716 F.3d at 774, 776. But any discovery must comport with § 4, which "calls for a *summary*

*trial*—not death by discovery." *Howard*, 748 F.3d at 978. We also save for the district court the question whether Boykin has preserved any right to a jury (rather than a bench) trial. *Cf. Burch*, 861 F.3d at 1346–50.

We reverse and remand for proceedings consistent with this opinion.