NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0115n.06

No. 24-3428

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Feb 27, 2025
KELLY L. STEPHENS, Clerk

RYAN PAGE, on behalf of himself and all others
similarly situated,

    Plaintiff-Appellant,

v.

GAMESTOP CORPORATION,

    Defendant-Appellee.

)
)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO

OPINION

Before: MOORE, KETHLEDGE, and BLOOMEKATZ, Circuit Judges.

BLOOMEKATZ, Circuit Judge. Ryan Page brought this putative class action against GameStop, alleging that GameStop violated various states' consumer-protection laws when it falsely promised free shipping for certain purchases from its online store. Page was a member of GameStop's rewards program and used his membership to make the purchase at the center of this lawsuit. The membership terms for the rewards program—which Page had agreed to via an in-store pin pad—contained a mandatory arbitration provision. Therefore, the district court granted GameStop's motion to compel arbitration and dismissed the suit. Page appeals, arguing that he was never given the opportunity to review the membership terms before agreeing, and therefore cannot be bound by the arbitration clause. We disagree and affirm.

**BACKGROUND**

GameStop is a longtime vendor of gaming and entertainment products, with both brick-and-mortar locations and an online store. GameStop offers a rewards program for its customers called the GameStop Pro Program. Page first enrolled in 2016. To become a member, Page had to

affirmatively enroll and pay an annual fee, after which he received "exclusive deals and products only available to Pro members." Larkin Decl., R. 10-2, PageID 79. Pro members must renew their membership each year to retain these benefits.

Page most recently renewed his membership on August 27, 2023, in-person at a GameStop store. He did so using one of the store's pin pads. During the transaction, the following message appeared on the screen with a green "I Agree" button and a blue "I Don't Agree" button underneath:

> By clicking "I Agree" you agree to be bound by the GameStop Pro Program Terms & Conditions, which will be sent to you by email or are available in hard copy from any associate. You also agree that we may contact you by email to provide important information about your Membership, including renewal reminders and opportunities or content that might interest you.

*Id.* at PageID 80, 131. Page clicked the "I Agree" button. According to GameStop's Vice President of Technology, Charles Larkin, at that time, "the only way a customer could purchase a Pro membership in-store was to first agree to the Pro Terms & Conditions by clicking 'I Agree' on the point-of-sale pin pad." *Id.* at PageID 80. Page did not receive a hard copy of the terms and conditions in the store, but he does not say he asked for one. Within a few days of Page's renewing his membership, GameStop sent him two "welcome emails" that contained links to the Pro Terms and Conditions at the very bottom of the messages.

The Pro Terms and Conditions contain an arbitration provision. Near the top of the terms and conditions, in bold and all-caps, is a statement that indicates the terms "**CONTAIN A MANDATORY ARBITRATION AND CLASS ACTION WAIVER PROVISION**." *Id.* at PageID 92. In the "Dispute Resolution" section, the terms and conditions provide—also in bold and all-caps—that:

**THIS SECTION WILL, WITH LIMITED EXCEPTION, REQUIRE YOU AND GAMESTOP TO SUBMIT CLAIMS AGAINST EACH OTHER TO BINDING AND FINAL ARBITRATION ON AN INDIVIDUAL BASIS. THIS MEANS THAT YOU WILL NOT BE ABLE TO BRING A CLASS, COLLECTIVE, OR REPRESENTATIVE LAWSUIT IN A COURT OF LAW BEFORE A JUDGE OR JURY OR TO APPEAL DECISIONS CONCERNING ANY DISPUTE THAT MAY ARISE WHICH IS COVERED BY THE ARBITRATION AGREEMENT AND ARE INSTEAD AGREEING TO SUBMIT ANY SUCH DISPUTE SOLELY ON YOUR OWN BEHALF TO AN IMPARTIAL ARBITRATOR.**

*Id.* at PageID 96–97. The terms then elaborate on the governing law, the specifics of arbitration, the jury-trial waiver, and the class-action waiver. The terms specify that disputes are to be "governed by federal law and the Federal Arbitration Act as to arbitration issues and the law of the State of Texas for all other issues, without reference to the principles of conflicts of laws thereof." *Id.* at PageID 97.

On the same day he renewed his membership in-store, Page made a purchase on GameStop's website. Page spent $131.08 on GameStop products, receiving over $30 in discounts because he used his Pro membership to make the purchase. Page alleges he spent as much as he did because of GameStop's promise of "FREE Shipping Over $79." Compl., R. 1, PageID 4, 6. However, the order summary reflected a $7.99 charge for "Shipping & Handling." *Id.* at PageID 5. Page went through with the purchase, and then contacted GameStop about the charge shortly thereafter. A customer service representative responded that GameStop had "charged $7.99 for the handling but not the shipping." *Id.* at PageID 5–6.

Page brought a proposed class action complaint against GameStop, alleging that the company's "deceptive and fraudulent practices" regarding the shipping and handling fee violated the Ohio Consumer Sales Practices Act, Ohio Rev. Code § 1345.02, violated several other states'

consumer protection laws, and unjustly enriched GameStop. *Id.* at PageID 11–16. He sought class-wide declaratory relief, injunctive relief, compensatory damages, and punitive damages.

GameStop filed a motion to dismiss the case and compel arbitration, arguing that the Pro Terms and Conditions required it. Page opposed the motion, arguing that GameStop did not provide him notice of the arbitration provision, so there was no enforceable agreement to arbitrate.[1] In support, Page submitted a declaration in which he averred that "[n]o sales associate at GameStop ha[d] ever provided [him] a hard copy of GameStop's Pro Terms," he had "never been aware of the arbitration provision," and he had "never agreed" to arbitrate his claims against GameStop. Page Decl., R. 17, PageID 221.

Finding that an enforceable agreement existed between the parties, the district court granted GameStop's motion. Page timely appealed.

## ANALYSIS

Page argues that the district court erred in granting GameStop's motion to dismiss and compel arbitration because GameStop failed to show that the parties mutually assented to arbitration. We review the district court's decision to compel arbitration de novo. *Boykin v. Fam. Dollar Stores of Mich., LLC*, 3 F.4th 832, 836 (6th Cir. 2021). Because the parties reached an enforceable agreement to arbitrate, we affirm.

Whether the parties agreed to arbitrate is generally a matter of state law. *See First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). At the outset, the parties dispute which state's law applies. GameStop argues that Texas law applies because the Pro Terms require it. Page

---

[1] Page also argued that the website's Conditions of Use, not the Pro Terms, governed the website purchase, and that the Conditions of Use do not contain an arbitration provision. district court rejected this argument, and Page does not challenge that ruling on appeal.

contends Ohio law applies because he challenged whether a contract had even been formed, and applying Texas law would presume as valid the very agreement in dispute. Our precedent supports Page's view. *See Langley v. Prudential Mortg. Cap. Co.*, 546 F.3d 365, 368 (6th Cir. 2008) (per curiam). However, we agree with the district court and the parties that the relevant principles of contract formation are the same under either state's law. So we need not decide the choice-of-law question. *See Bank of Am., N.A. v. Corporex Realty & Inv. Corp.*, 661 F. App'x 305, 311 (6th Cir. 2016).

Under either Ohio or Texas law, the parties mutually assented to arbitration when Page agreed to the Pro Terms using the in-store pin pad. Both Ohio and Texas courts require the familiar elements for forming a valid contract, including offer, acceptance, consideration, and manifestation of mutual assent. *Kostelnik v. Helper*, 770 N.E.2d 58, 61 (Ohio 2002); *Coleman v. Reich*, 417 S.W.3d 488, 491 (Tex. App. 2013). Both states also recognize the validity of "clickwrap" agreements, in which a party assents to a contract by "'clicking' some form of 'I agree' or 'accept' button on a website to complete the transaction." *StubHub, Inc. v. Ball*, 676 S.W.3d 193, 200 (Tex. App. 2023); *accord Rudolph v. Wright Patt Credit Union*, 175 N.E.3d 636, 651–52 (Ohio Ct. App. 2021). For a "clickwrap" agreement to be valid, the party must have notice of the terms' existence and have an adequate opportunity to review them. *See Gibbs v. Firefighters Cmty. Credit Union*, 177 N.E.3d 294, 301 (Ohio Ct. App. 2021); *In re Online Travel Co.*, 953 F. Supp. 2d 713, 719 (N.D. Tex. 2013) (applying Texas law). That doesn't mean, though, that a party can void a contract just because they chose not to read its terms in full. So long as the terms were "conspicuously presented" before the party had to agree—often via a hyperlink or scroll box—Texas and Ohio courts will find a valid clickwrap agreement, even if the agreeing party did not

actually review the terms. *In re Online Travel Co.*, 953 F. Supp. 2d at 719 (citation omitted); *accord Ranazzi v. Amazon.com, Inc.*, 46 N.E.3d 213, 217–18 (Ohio Ct. App. 2015).

While neither party points us to a case with identical facts, we do not believe a Texas or Ohio court would find Page's case materially distinguishable from the clickwrap agreements they've found enforceable. *See Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 563 (6th Cir. 2008) (directing us to predict how a state court would rule in the absence of on-point authority). The message on the pin pad said that the Pro Terms "are available in hard copy from any associate." Larkin Decl. & Exs., R. 10-2, PageID 80, 131. The pin-pad message "conspicuously presented" the existence of the terms to Page and instructed him how to access them readily. *In re Online Travel Co.*, 953 F. Supp. 2d at 719. In his declaration, Page averred that "[n]o sales associate at GameStop . . . ever provided [him] a hard copy of GameStop's Pro Terms," and he therefore had "never been aware of the arbitration provision" contained therein. Page Decl. R. 17, PageID 221. But on this record, there is no reason to believe that a hard copy was unavailable had Page asked for one. Just as someone who agrees to terms presented via a hyperlink can be bound even without clicking the link or reading them, by pressing "I Agree" when he had the opportunity to review, Page assented to the Pro Terms, including arbitration. *See In re Online Travel Co.*, 953 F. Supp. 2d at 719; *Ranazzi*, 46 N.E.3d at 217–18.

Page's arguments to the contrary are unpersuasive. Page argues that the pin pad transaction could not have been a valid clickwrap agreement because it was not presented online, the pin pad screen did not display the terms, and there was no hyperlink or scroll box that would have allowed Page to view the terms on the pin pad before agreeing. Those arguments elevate form over substance. *See RealPage, Inc. v. EPS, Inc.*, 560 F. Supp. 2d 539, 545 (E.D. Tex. 2007) (holding that, while a scroll box is evidence of notice of terms, it is not required); *Rudolph*, 175 N.E.3d at

652 (indicating that the focus of the inquiry is whether the terms were presented in a "sufficiently conspicuous" way, rather than the precise manner in which the terms were presented). We think the situation here—in which Page was notified he was assenting to the terms and informed he could ask a sales associate for a copy—presented Page with an adequate opportunity to review the terms before clicking "I Agree."

Page also contends that actions after he renewed his Pro membership cannot constitute his notice of or assent to the terms. So, he argues, the fact that GameStop sent "welcome emails" a few days later with the terms linked and the fact that Page made later purchases using his Pro membership are both irrelevant to whether he agreed to arbitrate disputes about his August purchase. As Page rightly states, there can be no "meeting of the minds" regarding terms a party has not been made aware of. *Zelina v. Hillyer*, 846 N.E.2d 68, 70–72 (Ohio Ct. App. 2005). But he was told about—and given the opportunity to view—the terms before agreeing to them on the pin pad. Under existing law, that's enough to bind him to arbitration, even without reference to subsequent emails and purchases.

Lastly, Page asserts that the district court should have held a summary trial to determine whether the parties had formed a valid agreement to arbitrate. If the "making of the arbitration agreement . . . [is] in issue," § 4 of the Federal Arbitration Act requires the court to hold a summary trial on the question before compelling arbitration. *Boykin*, 3 F.4th at 837 (quoting 9 U.S.C. § 4). In other words, much like when determining whether to grant summary judgment, the district court can't compel arbitration if there is a "genuine issue as to any material fact" regarding the formation of the arbitration agreement. *Id.* at 838–39 (quoting Fed. R. Civ. P. 56(c)). To show a genuine dispute, Page must "present specific facts, as opposed to general allegations," from which one

could reasonably conclude he "did not acknowledge the agreement or learn about the arbitration condition." *Id.* at 839 (citation and internal quotation marks omitted).

Page argues that his "unequivocal denial" that he had ever seen the terms or agreed to arbitration suffices to "create a genuine dispute of fact" warranting a summary trial. *Id.* at 840 (citation omitted). It doesn't. As noted above, Page can be bound to the agreement even if he never read it, so long as he was given a sufficient opportunity to do so before agreeing. And he does not dispute that he was given notice of the existence of the terms on the pin pad and that a hard copy was available to him. His "general allegations" that he was never made aware of the arbitration provision are thus insufficient to "allow a rational trier of fact to find" that he lacked sufficient notice of the terms' existence or opportunity to review them. *Id.* at 839 (citation omitted); *see also Campinha-Bacote v. AT&T Corp.*, No. 16AP–889, 2017 WL 2817566, at *3 (Ohio Ct. App. June 29, 2017); *StubHub*, 676 S.W.3d at 202.

Page points us to *Boykin*, where we held that the plaintiff was entitled to a summary trial regarding the formation of an agreement to arbitrate. 3 F.4th at 841. But his reliance is misplaced. In *Boykin*, the plaintiff declared that he "unequivocally did not *consent to, sign, acknowledge or authorize* any type of arbitration agreement." *Id.* at 840 (emphasis added). Here, Page does not dispute that he clicked "I Agree" on the pin pad. He submits only that "[n]o sales associate at GameStop ha[d] ever provided" him with a hard copy of the terms, and that he had "never been aware of the arbitration provision" contained therein. Page Decl., R. 17, PageID 221. Because Page did not "put in 'issue' whether he *accepted* the arbitration contract," but rather challenged only whether he reviewed it, *Boykin* does not help him. 3 F.4th at 839 (emphasis added); *see also Bazemore v. Papa John's U.S.A., Inc.*, 74 F.4th 795, 798 (6th Cir. 2023) ("[Plaintiff's] testimony that he never saw the agreement was therefore enough to create a genuine issue as to whether he

*signed* it." (emphasis added)). Accordingly, the district court was not required to conduct a summary trial and properly compelled arbitration on the record before it.

## CONCLUSION

We affirm the district court's decision to compel arbitration and dismiss the case.