# United States Court of Appeals
### For the Eighth Circuit

_____

No. 16-1949
_____

City of Benkelman, Nebraska, A Political Subdivision

*Plaintiff - Appellant*

v.

Baseline Engineering Corporation, A Colorado Corporation

*Defendant - Appellee*

Layne Christensen Company, a Delaware Corporation

*Defendant*

_____

Appeal from United States District Court
for the District of Nebraska - North Platte

_____

Submitted: August 1, 2017
Filed: August 11, 2017

_____

Before RILEY, BEAM, and SHEPHERD, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

A rural Nebraska community seeks federal review of its multi-million dollar claims against a Colorado corporation. A United States District Court in Nebraska

determined that it lacked jurisdiction over the claims and issued a final judgment[1] ordering the parties to proceed to arbitration in Colorado. With jurisdiction under 28 U.S.C. § 1291, we reverse and remand for further proceedings.

## I.

The City of Benkelman is a community of less than one thousand residents located in Dundy County, Nebraska. In 2005, the state health and human services department ordered the City to address the excessive amounts of uranium, arsenic, and other contaminants in the City's drinking water supply. The City subsequently contracted with Baseline Engineering Corporation, a Colorado organization, to assist with the permitting, design, and construction of a water treatment plant for the City. The City obtained partial funding for the project from the United States Department of Agriculture - Rural Development ("USDA-RD").

The project began in July 2009 and the plant was operating by May 2012. In June 2012, however, laboratory tests of treated water samples showed that the uranium levels still did not comply with federal drinking water standards. Around five months later, the state denied final approval of the plant for failure to effectively treat the City's water supply.

The City sued Baseline[2] in federal court in Nebraska, alleging breach of contract, negligence and professional malpractice, fraud, and negligent misrepresentation. Seeking damages in excess of $5.5 million, the complaint averred that Baseline failed to properly design the treatment plant, misrepresented itself as a

---

[1]See Fed. R. Civ. P. 54(b).

[2]The City also sued Layne Christensen Company, which the City had hired to furnish labor, equipment, and materials for the plant. Layne is not a party to this appeal.

water engineering expert, and gave false information about how to bring the City's water supply into compliance with state and federal laws.

Baseline moved to dismiss the complaint. Citing generally Federal Rule of Civil Procedure 12(b), Baseline argued that the district court lacked jurisdiction due to a dispute resolution provision in a contract that both parties signed on or about July 21, 2009 (the "July 2009 Contract"). Under the July 2009 Contract, if the parties cannot resolve a dispute through a "a face-to-face meeting," the dispute must be "submitted to binding arbitration . . . conducted at a suitable location within 15 miles of [Baseline's] then existing principal office. The arbitration shall be completed pursuant to the Uniform Arbitration Act, C.R.S. § 13-22-201, *et seq.*, and governed by the provisions of the Colorado Rules of Civil Procedure, before a single arbiter." The July 2009 Contract further provides that, if the parties waive arbitration or if the arbitration provision is invalidated or does not apply, "venue for any court proceeding will be the District Court for Jefferson County, State of Colorado."[3]

The City opposed Baseline's motion, arguing that the July 2009 Contract does not control because it was superseded by a second contract that the parties signed on

---

[3]Baseline's motion to dismiss further asserted that, on the same day the City commenced federal litigation, Baseline filed a demand for arbitration in Colorado seeking to recover an outstanding balance that the City allegedly owed under the July 2009 Contract. The parties dispute the current status of the Colorado arbitration proceedings. According to the City, after the City objected to arbitration the arbiter stayed the matter to allow the federal district court to determine whether a binding arbitration agreement exists. By contrast, Baseline contends that the arbiter did not stay the arbitration proceedings but that, after the City objected, the arbiter declined to accept jurisdiction and directed resolution of the jurisdictional dispute to a court of competent jurisdiction. Under either view, at this time the parties are not actively involved in arbitration proceedings.

or slightly before August 27, 2009[4] (the "August EJCDC Agreement"). The August EJCDC Agreement, comprised of thirteen pages and ten exhibits, is a standard form contract prepared by the Engineers Joint Contract Documents Committee (the "EJCDC"). The City claims that, because the treatment plant was funded in part by USDA-RD, the parties were required to execute the EJCDC agreement and have it approved by USDA-RD. Indeed, in a letter dated August 28, 2009, Baseline submitted the parties' signed August EJCDC Agreement to the USDA-RD, and the Agreement was approved on October 5, 2009. Because paragraph 6.01K of the August EJCDC Agreement states that "[a]ll [c]ontract [d]ocuments . . . shall be subject to [a]gency concurrence," the City argues that the July 2009 Contract (which was not sent to USDA-RD for approval) simply memorialized the parties' initial agreement but was later replaced as the governing document by the agency-approved August EJCDC Agreement.

The August EJCDC Agreement has its own arbitration provision, although the provision is not mandatory and is triggered only if a dispute survives the parties' good faith negotiation and mediation. In such an event the August EJCDC Agreement states that "either party may seek to have the [d]ispute resolved by a court of competent jurisdiction." Alternatively, if less than $200,000 is in controversy, the dispute may be resolved by a method mutually agreed upon by the parties, "including but not limited to arbitration."

In addition to conflicting arbitration and forum selection clauses, the July and August contracts contain the following terms relevant to Baseline's motion to dismiss:

---

[4]Though the signatures on the August EJCDC Agreement are dated August 17, 2009, and August 27, 2009, page one of the Agreement states that it is effective as of July 20, 2009.

**(1) Incorporation by reference.** Though the August EJCDC Agreement was signed around a month after the July 2009 Contract, it is twice incorporated by reference as "Exhibit B" to the July 2009 Contract. First, page 1 of the July 2009 Contract contains a box titled "Job Description" followed by an instruction to "[s]ee Exhibit B hereto - for accompanying EJCDC agreement." Second, a provision on page 3 titled "Entire Contract" states, "Exhibits A and B hereto are incorporated into this Agreement as fully set forth herein."

**(2) Choice-of-law.** The July 2009 Contract contains a choice-of-law provision stating that the parties' agreement "shall be governed by the laws of the State of Colorado." Under the August EJCDC Agreement, however, "the law of the state in which the Project is located"—Nebraska—controls.

**(3) Merger clauses.** Each contract purports to represent the entire agreement between the parties and to trump any prior or inconsistent agreements. The July 2009 Contract states:

> This Agreement and the documents set forth in Exhibits A and B hereto shall supersede any other contract between [the City] and [Baseline], relating to the subject matter thereof. This is a fully integrated Contract. Any previous statements, representations, agreements, negotiations or discussions are null and void, and are fully merged herein. In case of a conflict or inconsistency between this Agreement and any other contract documents, this Agreement shall control. [Baseline] makes no promises or agreements written or oral except for the provisions herein set forth.

The August EJCDC Agreement likewise states:

> This Agreement (consisting of pages 1 to 13, inclusive, together with the exhibits identified above) constitutes the entire agreement between [the City] and [Baseline] for the Project and supersedes all prior written or oral understandings.

In considering Baseline's motion to dismiss, the district court first determined that, although the motion cited only generally Rule 12(b), it should be construed as a Rule 12(b)(1) motion to dismiss for lack of jurisdiction. The court looked beyond the motion's caption to its content, which argued that the court "lacks jurisdiction" and that "this [c]ourt's jurisdiction is limited to enforcing the valid and enforceable forum selection clause in the [c]ontract." (internal quotation marks omitted).

Next, applying Rule 12(b)(1), the court characterized the motion as a factual challenge to subject matter jurisdiction (as opposed to a facial challenge) because Baseline accompanied the motion with exhibits that offered factual information not appearing in the City's complaint. See Branson Label, Inc. v. City of Branson, 793 F.3d 910, 914-15 (8th Cir. 2015) (discussing the difference in factual and facial challenges to subject matter jurisdiction). This led the court to decide that, as the nonmoving party in a Rule 12(b)(1) factual challenge, the City (1) has "the burden of proof that jurisdiction does in fact exist," and (2) is afforded "no presumptive truthfulness" with respect to its allegations. See Osborn v. United States, 918 F.2d 724, 730 (8th Cir. 1990) (internal quotation marks omitted).

The district court then considered which contract governs the parties' dispute. Applying state-law principles of contract interpretation, the court concluded that "[t]he contracts in this case must be construed as one because they involve the same parties and same transaction, and because the July 2009 Contract expressly states that it incorporates the EJCDC Agreement into it as 'Exhibit B.'" The court noted, however, that construing the two documents as one contract brings to light the inconsistencies between the various provisions. Citing Colorado and Nebraska law,[5]

---

[5]See David Fiala, Ltd. v. Harrison, 860 N.W.2d 391, 397 (Neb. 2015); JTS Choice Enterprises, Inc. v. E.I. Dupont De Nemours & Co., No. 11-cv–03143, 2013 WL 154421, at *3-4 (D. Colo. Jan. 15, 2013).

the court concluded that (1) the inconsistent provisions render the contract ambiguous and (2) extrinsic evidence may therefore be considered in order to discern the parties' intent.

The only extrinsic evidence was presented for the first time with Baseline's reply brief supporting the motion to dismiss. The affidavit of Baseline President John McLain and attachment revealed that in June 2011—two years into the project—the parties executed three orders expanding their initial agreement to include additional engineering services (the "2011 Change Orders"). Each order (1) specifically references and quotes the "Additional Work" clause set forth *in the July 2009 Contract* and (2) states that "[a]ll [a]dditional [w]ork will be performed under and considered an extension of the above mentioned Agreement." The district court held that the 2011 Change Orders are extrinsic evidence indicating that the parties intended "that the July 2009 Contract remain operative, controlling, and *not* superseded by the attached EJCDC Agreement."

Turning to the July 2009 Contract, the court looked to the provision stating: "In case of a conflict or inconsistency between this Agreement and any other contract documents, *this Agreement shall control*." (emphasis added). Thus the court concluded that "the July 2009 Contract 'controls' the conflicting provisions regarding applicable law and arbitration, making Colorado law applicable and requiring the parties to submit to binding arbitration in Colorado, to be conducted in the fashion described in the July 2009 Contract." The court therefore granted Baseline's Rule 12(b) motion and dismissed the City's claims against Baseline without prejudice. The court directed that the City's claims against Baseline proceed to arbitration in Colorado.

II.

"We review de novo the grant of a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1)." Great Rivers Habitat Alliance v. Fed. Emergency

Mgmt. Agency, 615 F.3d 985, 988 (8th Cir. 2010) (citation omitted) (internal quotation marks omitted).

## A.

The City argues that the motion cannot be construed as a challenge to the district court's subject matter jurisdiction under Rule 12(b)(1). Instead, the City contends, the motion should be analyzed under either Rule 12(b)(3) as a challenge to venue, Rule 12(b)(6) as an assertion that the City's complaint failed "to state a claim upon which relief can be granted," or Rule 56 as a motion for summary judgment.

We first consider the City's proposal to treat the motion as a motion to dismiss for improper venue under Rule 12(b)(3). According to the City, arbitration clauses are substantially similar to forum-selection clauses, and therefore a motion to dismiss based on an arbitration clause should be treated as a Rule 12(b)(3) objection to venue. The City bases its analogy on Scherk v. Alberto-Culver Co., where the Supreme Court indeed described arbitration agreements as "a specialized kind of forum-selection clause." 417 U.S. 506, 519 (1974).

But the City overlooks more recent Supreme Court precedent that forecloses its Rule 12(b)(3) argument. Since Scherk, the Supreme Court has expressly held that parties may not enforce forum-selection clauses through Rule 12(b)(3) motions to dismiss. Atl. Marine Constr. Co. v. U.S. Dist. Court for the W. Dist. of Tex., 134 S. Ct. 568, 577 (2013). The Court explained, "Rule 12(b)(3) allow[s] dismissal only when venue is 'wrong' or 'improper.' Whether venue is 'wrong' or 'improper' depends exclusively on whether the court in which the case was brought satisfies the requirements of federal venue laws, and those provisions say nothing about a forum-selection clause." Id.; see also In re Union Elec. Co., 787 F.3d 903, 907 (8th Cir. 2015) (stating that Atlantic Marine "clearly eliminated the possibility of using Rule 12(b)(3) as a means to enforce a forum-selection clause"). Thus, to the extent an

arbitration provision is like a forum-selection clause, the motion seeking to compel arbitration is not properly construed under Rule 12(b)(3).

We next consider the City's assertion that the district court erred by analyzing the motion under Rule 12(b)(1). We have previously upheld, on interlocutory appeal, the denial of a motion to compel arbitration styled as a Rule 12(b)(1) motion to dismiss. U.S. for Use of Lightning & Power Servs., Inc. v. Interface Constr. Corp., 553 F.3d 1150, 1152 (8th Cir. 2009). And, as Baseline points out, we have also upheld the grant of a Rule 12(b)(1) motion to dismiss based on an arbitration clause contained in a collective bargaining agreement under the Railway Labor Act, a jurisdiction-stripping statute. Thompson v. Air Transp. Int'l Ltd. Liab. Co., 664 F.3d 723, 725 (8th Cir. 2011). But we have not addressed whether an arbitration agreement alone—independent of statutory or other binding jurisdictional limitations—divests the federal courts of subject matter jurisdiction. We hold that it does not.

Our decision is informed by the Supreme Court's reasoning in Atlantic Marine. 134 S. Ct. at 577. The Court concluded that federal venue laws, not forum-selection clauses, govern the propriety of venue under Rule 12(b)(3). Id. The same logic applies where, as here, a party seeks to enforce an arbitration agreement under Rule 12(b)(1). Just as a forum-selection clause has no bearing on the issue of whether venue is "wrong" or "improper," an arbitration agreement has no relevance to the question of whether a given case satisfies constitutional or statutory definitions of jurisdiction. See Auto. Mech. Local 701 v. Vanguard Car Rental, 502 F.3d 740, 743 (7th Cir. 2007) ("Enforcement of a forum selection clause (including an arbitration clause) is not jurisdictional . . . ."); Minn. Supply Co. v. Mitsubishi Caterpillar Forklift Am., Inc., 822 F. Supp. 2d 896, 904 n.10 (D. Minn. 2011) ("To dismiss a federal action for lack of subject matter jurisdiction *because* the dispute is subject to a binding arbitration agreement mistakenly assumes that an arbitrable dispute, by definition, falls outside the realm of federal jurisdiction. Moreover, the fact that the parties have contractually agreed to resolve any particular dispute by arbitration says

nothing about whether that dispute would satisfy federal question, diversity or any other basis of subject-matter jurisdiction."). But see Gilbert v. Donahoe, 751 F.3d 303, 306 (5th Cir. 2014) ("[A] district court lacks subject matter jurisdiction over a case and should dismiss it pursuant to Federal Rule of Civil Procedure 12(b)(1) when the parties' dispute is subject to binding arbitration.").

We therefore hold that, contrary to Baseline's contention, the July 2009 Contract's arbitration clause does not strip the federal courts of jurisdiction. Accordingly, we agree with the City that the district court erred in construing the motion as a Rule 12(b)(1) challenge to subject matter jurisdiction.

We are thus left with two alternative classifications: Rule 12(b)(6) (failure to state a claim) and Rule 56 (summary judgment).

Baseline offers no reason why Rule 12(b)(6) does not apply. As to Rule 56, Baseline cites a case from the Eastern District of Virginia and argues that applying Rule 56 would be prejudicial because the City could claim that Baseline waived its right to compel arbitration by moving for summary judgment. See Karnette v. Wolpoff & Abramson, L.L.P., 444 F. Supp. 2d 640, 648 (E.D. Va. 2006). The issue in Karnette—a non-binding district court opinion—was whether the defendant waived its right to arbitration by moving for summary judgment *for the purpose of* using the plaintiffs' response to "reassess its chances of winning the case" before deciding whether to move to compel arbitration. Id. As no such litigation tactics are at play in this case, we are unmoved by Karnette.

Upon careful review of the relevant authority, we agree with the City that Baseline's motion is properly analyzed under either Rule 12(b)(6) or Rule 56. To be sure, the motion does not sit squarely on all fours with either rule. We are nonetheless satisfied that, unlike the cases interpreting Rules 12(b)(1) or (b)(3), the legal authority does not forbid parties from using Rules 12(b)(6) or 56 to enforce an

arbitration agreement.[6]  To the contrary, our sister circuits regularly employ Rules 12(b)(6) and 56 when deciding whether to compel arbitration.  See Guidotti v. Legal Helpers Debt Resolution, L.L.C., 716 F.3d 764, 771 (3d Cir. 2013); Cnty. of McHenry v. Ins. Co. of the West, 438 F.3d 813, 817, 821 (7th Cir. 2006); see also Tinder v. Pinkerton Sec., 305 F.3d 728, 735 (7th Cir. 2002) (citing cases from the Second, Third, and Fifth Circuits and stating that "courts that have addressed the question have analogized the . . . evidentiary standard a party seeking to avoid compelled arbitration must meet . . . to that required of a party opposing summary judgment").

We decline to press the matter by deciding between Rule 12(b)(6) and 56, because summary judgment standards apply either way.  In litigating Baseline's motion both parties submitted matters outside the pleadings, which the district court considered when granting the motion.[7]  Thus, even if the motion is construed under Rule 12(b)(6), it must ultimately "be treated as one for summary judgment under Rule 56."  See Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) . . . , matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."); see also Evans v. McDonnell Aircraft Corp., 395 F.2d 359, 361 (8th Cir. 1968) ("Since both parties filed affidavits and exhibits in support of their respective positions, which were not

---

[6]To the extent Baseline seeks to enforce the forum-selection clause independent of the arbitration agreement, Baseline should have invoked the *forum non conveniens* doctrine.  See Atlantic Marine, 134 S. Ct. at 580 ("[T]he appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of *forum non conveniens*.").

[7]Baseline filed two affidavits and two exhibits along with the motion to dismiss; the City opposed the motion by filing an opposition brief accompanied by one exhibit; and Baseline replied to the City's opposition brief with its own brief supporting the motion accompanied by one attachment, one affidavit, and one exhibit.

excluded by the District Court, the motion to dismiss should properly have been treated as one for summary judgment.").[8]

B.

Had the district court analyzed Baseline's motion as one for summary judgment, we would review de novo the summary judgment analysis by deciding whether there are genuine issues of material fact and whether Baseline "is entitled to a judgment as a matter of law." See Fed. R. Civ. P. 56(a); see also Jackson v. Riebold, 815 F.3d 1114, 1119 (8th Cir. 2016) (standard of review for summary judgment appeal is de novo). However, the district court has not addressed, nor have the parties had an opportunity to brief, whether Baseline's motion should succeed under Rule 56. Were we to adjudicate the merits of the motion, therefore, we would violate our own general rule against considering issues for the first time on appeal. See, e.g., Weitz Co. v. Lloyd's of London, 574 F.3d 885, 890 (8th Cir. 2009).

Although our rule is not absolute, we think it best in this case that summary judgment proceedings—which are inherently fact intensive and may lead the parties to trial—be held first in the district court. See CMH Homes, Inc. v. Goodner, 729 F.3d 832, 838 (8th Cir. 2013) (indicating that "the district court is better equipped to address [fact-intensive questions] in the first instance."); United States v. Smith, 665 F.3d 951, 956 (8th Cir. 2011) (suggesting that "the district court [is] in a far better position to address" questions of fact than the appellate court). Accordingly, we

---

[8]We would reach the same result were we to construe the Rule 12(b) motion as a motion to compel arbitration. See Neb. Mach. Co. v. Cargotec Solutions, LLC, 762 F.3d 737, 741-42 (8th Cir. 2014) (stating that motions to compel arbitration that are accompanied by attached exhibits and affidavits should be treated under summary judgment standards).

reverse the order dismissing the City's claims against Baseline and remand for consideration of Baseline's motion under summary judgment standards.[9]

## III.

For these reasons, the order of the district court is reversed and the case is remanded for further proceedings.

_____

[9]Since the parties' oral arguments on May 11, 2017, the Supreme Court decided Kindred Nursing Centers Limited Partnership v. Clark, 137 S. Ct. 1421 (2017). Based on language in Part IIB of that intervening opinion regarding the scope of the Federal Arbitration Act—a statute that neither party invoked before this court—we ordered supplemental briefing to allow the parties to address whether Part IIB of Kindred Nursing impacts this case. The parties submitted their supplemental briefing on July 31, 2017.

After carefully reviewing the supplemental briefs, we decline to rule at this time on the relevance (if any) of Kindred Nursing to the underlying dispute. The instant appeal turns on matters of civil procedure, not substantive law. Our holding is limited to a decision that (1) Baseline's ambiguous Rule 12(b) motion should be analyzed under summary judgment standards, and (2) the district court should be the first to apply those standards. Thus, an analysis by this court of Kindred Nursing would only splinter legal issues presented in this case which are best adjudicated collectively in summary judgment proceedings in the district court.