# United States Court of Appeals
## For the First Circuit

No. 19-2248

AIR-CON, INC.,

Plaintiff, Appellant,

v.

DAIKIN APPLIED LATIN AMERICA, LLC,

Defendant, Appellee,

TECHNICAL DISTRIBUTORS, INC.,

Defendant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Gustavo A. Gelpí, Jr., U.S. District Judge]

Before

Howard, Chief Judge,
Lipez and Thompson, Circuit Judges.

Rafael M. Santiago-Rosa, with whom Vanessa Medina-Romero and
Marichal, Hernandez, Santiago & Juarbe, LLC were on brief, for
appellant.
Mauricio Oscar Muñiz-Luciano, with whom Valerie Blay-Soler
and Marini Pietrantoni Muñiz LLC were on brief, for appellee.

December 20, 2021

**LIPEZ**, **Circuit Judge**.  In the lawsuit that initiated these proceedings, appellant Air-Con, Inc. contends that appellee Daikin Applied Latin America, LLC ("Daikin Applied") engaged in practices that unlawfully impaired the parties' exclusive distribution relationship.  Daikin Applied moved to compel arbitration under the Federal Arbitration Act based on the terms of a written distribution agreement that Air-Con signed with Daikin Applied's parent company, Daikin Industries, LTD.  The district court granted Daikin Applied's request and ordered the parties to arbitrate their dispute. Air-Con appeals.  We reverse, concluding that the district court erred in compelling arbitration.

## I.

We draw the relevant facts from the complaint and exhibits attached to the complaint.[1]

### A. Factual Background

Air-Con is a Puerto Rico corporation specializing in the sale and distribution of air conditioners in Puerto Rico and the Caribbean.  Daikin Applied is a Miami-based wholesaler for its parent company, Daikin Industries, LTD, a Japan-based company that

---

[1] As we explain infra, the record for purposes of resolving a motion to compel arbitration generally includes the complaint and the record materials submitted in support of or opposition to the motion.  In this case, however, neither party submitted record materials to support or oppose the motion to compel arbitration.

"develop[s], manufacture[s], assembl[es,] and s[ells] . . . various models of air conditioning and refrigeration equipment."

In January 2000, Air-Con signed a written distribution agreement with Daikin Industries to be a "non-exclusive authorized distributor," in Puerto Rico and the Virgin Islands, of "new and unused air conditioning and refrigeration equipment manufactured by or for [Daikin Industries]." Daikin Industries did not counter-sign the written distribution agreement.

The written agreement contained an arbitration provision that required the parties to arbitrate in Osaka, Japan, "[a]ny dispute, controversy or difference which may arise between the parties out of, in relation to or in connection with th[e distribution agreement]." The agreement also contained a non-assignability clause stating that the agreement "and all rights[,] duties and obligations described [t]herein, are personal to each party and may not be assigned or otherwise transferred in whole or part without written consent of the other party." Any assignment by one party not authorized by the other party in writing is "null and void."

Air-Con also established in early 2000 a distribution relationship with Daikin Applied, the appellee in this case. Air-Con contends that its distribution relationship with Daikin Applied was not governed by its distribution agreement with Daikin Industries. Instead, Air-Con asserts that the parties entered

into a separate distribution relationship, not memorialized by any written document in the record, for "the exclusive sale and distribution of air conditioners and related equipment marketed under the Daikin brand for the territories of Puerto Rico and the Caribbean."[2]  Second Am. Compl. ¶ 6.[3]

The distribution relationship between Air-Con and Daikin Applied continued without incident until sometime in 2015.  Then, the relationship deteriorated.  Air-Con contends that, despite what it claims was an "exclusive" distribution relationship, Daikin Applied sold Daikin products to other Puerto Rico-based distributors and did so at a significantly lower price than it offered to Air-Con.  Some of those other distributors were also allowed to re-brand Daikin products and sell them to their own

---

[2] The precise nature of the parent-subsidiary relationship between Daikin Applied and Daikin Industries is unclear, as are the specifics of each company's relationship with Air-Con.  All that we can glean from the present record -- and all that is needed to decide the instant appeal -- is that Daikin Applied is a wholesaler for its parent company in the territories in which Air-Con sold Daikin products, and Air-Con alleges that it entered into a separate distribution agreement with each Daikin company:  (1) a written non-exclusive distribution agreement with the parent, Daikin Industries; and (2) an exclusive distribution agreement with the subsidiary, Daikin Applied, not memorialized by any writing in the record.

[3] Like the district court, we use "Second Amended Complaint" to refer to the certified translation of an amended complaint originally filed on October 12, 2018.  This document is available at ECF No. 15-10.  We note that a different certified translation (ECF No. 15-5) is also titled "Second Amended Complaint" and refers to an amended complaint originally filed on August 15, 2018.

- 4 -

customers at a lower price. Air-Con further contends that Daikin Applied arbitrarily raised prices for products sold to Air-Con by twenty-five to twenty-eight percent without explanation or prior notice. The price discrimination was apparently "so dramatic" that other distributors were able to sell Daikin products at a price lower than Air-Con was able to purchase those same products from Daikin Applied.

Air-Con also claims that, around the same time, it began experiencing serious problems with the delivery of inventory and parts. Deliveries were suspended, the waiting period for deliveries was increased by more than fifty percent, and Daikin Applied was nonresponsive to inquiries and requests for technical support. Air-Con also complains that Daikin Applied abruptly stopped offering certain products to Air-Con without notice or explanation.

## B. Procedural History

In July 2018, Air-Con filed suit in the Commonwealth Court of Puerto Rico against Daikin Applied, seeking injunctive relief and damages under Puerto Rico's Dealer Protection Act, P.R. Laws Ann. tit. 10, §§ 278-278e ("Law 75").[4] Daikin Applied removed

---

[4] Air-Con also sued five other defendants (Daikin North America, LLC, a/k/a Daikin Comfort; Technical Distributors, Inc.; ABC; Goodman Distribution; and McQuay Caribe, Inc.), but voluntarily dismissed all claims against those defendants before the case was removed to federal court.

the case to federal court based on diversity of citizenship. <u>See</u> 28 U.S.C. § 1332(a).

Shortly after removal, Daikin Applied filed a motion to compel arbitration,[5] arguing that the written distribution agreement between Air-Con and Daikin Industries governed Daikin Applied's distribution relationship with Air-Con and, pursuant to that agreement, the parties were bound to arbitrate Air-Con's claims. Alternatively, Daikin Applied argued that even if the written agreement is inapplicable or unenforceable, Air-Con still agreed to arbitrate all claims relating to the purchase and distribution of Daikin products in Puerto Rico by signing several purchase and sale agreements for specific shipments.

Air-Con opposed arbitration, arguing that the written agreement it signed was only a draft, not a final contract, as evidenced by Daikin Industries' failure to counter-sign the document. But even if the distribution agreement is deemed a final contract, Air-Con argued, it binds only Air-Con and Daikin Industries, not Daikin Applied. Invoking the agreement's non-assignability clause, Air-Con also argued that any purported

---

[5] Daikin Applied filed a single motion styled as a "Motion to Dismiss to Compel Arbitration" and invoked the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16, and the parties' alleged arbitration agreement as the basis for dismissal. We treat a motion to dismiss to compel arbitration as a motion to compel arbitration under the FAA when the moving party clearly invokes an arbitration agreement as the basis for its request. <u>Soto</u> v. <u>State Indus. Prods., Inc.</u>, 642 F.3d 67, 70 n.1 (1st Cir. 2011).

- 6 -

assignment of the agreement from Daikin Industries to Daikin Applied without Air-Con's written consent is null and void. Thus, according to Air-Con, because Daikin Applied was neither a party to the written agreement nor a proper assignee, Daikin Applied has no right to invoke the arbitration clause.

The district court agreed with Daikin Applied. It held that the distribution agreement was an enforceable contract between Air-Con and Daikin Applied. Without getting into the assignability issue, the court found that Daikin Applied and Air-Con had been operating pursuant to the terms of that agreement since the inception of their distribution relationship during the same year that the written agreement was signed. Moreover, the district court read allegations in Air-Con's complaint as admitting that the written agreement governed its relationship with Daikin Applied. Applying the terms of that agreement, the district court concluded that Air-Con's claims were within the scope of the arbitration clause and, on that basis, granted Daikin Applied's motion to compel arbitration.

Air-Con moved unsuccessfully to alter or amend the judgment pursuant to Federal Rule of Civil Procedure 59(e). It then timely appealed.

## II.

While our precedent makes clear that the party seeking to compel arbitration bears the burden of proving "that a valid

agreement to arbitrate exists," <u>Rivera-Colón</u> v. <u>AT&T Mobility P.R., Inc.</u>, 913 F.3d 200, 207 (1st Cir. 2019) (quoting <u>Soto-Fonalledas</u> v. <u>Ritz-Carlton San Juan Hotel Spa & Casino</u>, 640 F.3d 471, 474 (1st Cir. 2011)), we have not clarified what evidence, if any, the parties may submit in support of or opposition to a motion to compel arbitration. Nor have we affirmatively stated the standard of review that the trial court applies to the resolution of such a motion.[6]

We take this opportunity to resolve these open questions to aid future consideration by the district courts. To facilitate our discussion, we briefly summarize the relevant details of the FAA.

**A. The Federal Arbitration Act**

The FAA provides that a "written provision in . . . a contract . . . to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2. The FAA reflects Congress's intent to create a "liberal federal policy favoring arbitration."

---

[6] Air-Con notes this gap in our law in its opening brief and argues that the district court should have applied the summary judgment standard to Daikin Applied's motion. Although Daikin Applied contends that Air-Con waived this argument by failing to raise it below, we think that both parties treated Daikin Applied's motion like a motion to dismiss and proceeded accordingly. Moreover, as we explain, one of the district court's errors in this case involved the misapplication of the motion to dismiss standard, not the summary judgment standard.

- 8 -

AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 346 (2011) (quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983)). In passing the FAA, Congress sought to "place arbitration agreements 'upon the same footing as other contracts.'" Scherk v. Alberto-Culver Co., 417 U.S. 506, 511 (1974) (quoting H.R. Rep. No. 68-96, at 1 (1924)). Hence, the FAA requires courts to treat arbitration as "a matter of contract" and enforce agreements to arbitrate "according to their terms." Henry Schein, Inc. v. Archer & White Sales, Inc., 139 S. Ct. 524, 529 (2019); see also 9 U.S.C. § 4 (authorizing a party aggrieved by another party's noncompliance with a written arbitration agreement to petition in federal court for an order compelling arbitration).

As a consequence of the FAA's contract-based philosophy, its liberal policy favoring arbitration "is only triggered when the parties actually agreed to arbitrate." Rivera-Colón, 913 F.3d at 207. The court's first step in determining whether to compel arbitration is to identify a valid and enforceable agreement to arbitrate between the parties. Id. at 207; Nat'l Fed. of the Blind v. The Container Store, Inc., 904 F. 3d 70, 80 (1st Cir. 2018). The party seeking to compel arbitration bears the burden of demonstrating "that a valid agreement to arbitrate exists, that the movant is entitled to invoke the arbitration clause, that the other party is bound by that clause, and that the claim asserted comes within the clause's scope." Soto-Fonalledas, 640 F.3d at 474

(quoting Dialysis Access Ctr., LLC v. RMS Lifeline, Inc., 638 F.3d 367, 375 (1st Cir. 2011)).  Courts apply state contract law to determine whether a valid arbitration agreement exists.  Rivera-Colón, 913 F.3d at 207.

## B. Reviewing Motions to Compel Arbitration

Section 4 of the FAA prescribes the basis for court review of motions to compel arbitration:

> The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. . . . If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof.

9 U.S.C. § 4 (emphases added).  Most other circuits apply the summary judgment standard to motions under § 4.  See, e.g., Meyer v. Uber Techs., Inc., 868 F.3d 66, 74 (2d Cir. 2017); Guidotti v. Legal Helpers Debt Resol., L.L.C., 716 F.3d 764, 774-75 (3d Cir. 2013); Galloway v. Santander Consumer USA, Inc., 819 F.3d 79, 85 n.3 (4th Cir. 2016); Boykin v. Fam. Dollar Stores of Mich., LLC, 3 F.4th 832, 838 (6th Cir. 2021); Tinder v. Pinkerton Sec., 305 F.3d 728, 735 (7th Cir. 2002); City of Benkelman v. Baseline Eng'g Corp., 867 F.3d 875, 881-82 (8th Cir. 2017); Hansen v. LMB Mortg. Servs., Inc., 1 F.4th 667, 670 (9th Cir. 2021); Ragab v. Howard, 841 F.3d 1134, 1139 (10th Cir. 2016); Hearn v. Comcast

Cable Commc'ns, LLC, 992 F.3d 1209, 1215 n.3 (11th Cir. 2021); Aliron Int'l, Inc. v. Cherokee Nation Indus., Inc., 531 F.3d 863, 865 (D.C. Cir. 2008).[7] For the following reasons, we join our sister circuits in concluding that district courts should apply the summary judgment standard to evaluate motions to compel arbitration under the FAA.

Section 4's command to "hear the parties" appears to contemplate the submission and consideration of evidentiary materials -- including materials beyond those attached to the pleadings -- in support of and opposition to a motion to compel arbitration. See Moses H. Cone, 460 U.S. at 22 (noting that § 4 calls for some degree of "inquiry into factual issues"). The summary judgment standard, which evaluates the evidentiary supportability of claims, is more appropriate than Rule 12's plausibility standard, which is limited to a facial analysis of the pleadings, for evaluating whether a moving party has met its burden of demonstrating that arbitrability is not "in issue."

---

[7] The Third and Eighth Circuits apply the summary judgment standard when the resolution of a motion to compel arbitration depends on materials outside the pleadings. City of Benkelman, 867 F.3d at 881-82; Guidotti, 716 F.3d at 774-75. Their precedent contemplates the resolution of such motions under the Rule 12(b)(6) standard, rather than the Rule 56 standard, when the arbitrability of a claim is apparent from the face of the pleadings. City of Benkelman, 867 F.3d at 881-82; Guidotti, 716 F.3d at 774-75. The Fifth Circuit has not opined on this issue, but district courts in the Fifth Circuit have applied the summary judgment standard. E.g., Jackson v. Royal Caribbean Cruises, Ltd., 389 F. Supp. 3d 431, 443 (N.D. Tex. 2019).

- 11 -

Similarly, interpreting the FAA's "in issue" standard as analogous to the "genuine dispute of material fact" standard under Federal Rule of Civil Procedure 56 reinforces the FAA's dual goals of respecting private agreements and providing a mechanism for the swift resolution of disputes by requiring the party opposing arbitration to provide prompt notice of "whatever claims they may have in opposition to arbitration and the evidentiary basis of such claims." Oppenheimer & Co. v. Neidhardt, 56 F.3d 352, 358 (2d Cir. 1995) (quoting Manning v. Energy Conversion Devices, Inc., 833 F.2d 1096, 1103 (2d Cir. 1987)); see also Guidotti, 716 F.3d at 773.

Pursuant to the summary judgment standard, the court must construe the record in the light most favorable to the non-moving party and draw all reasonable inferences in its favor. Taite v. Bridgewater State Univ., Bd. of Trs., 999 F.3d 86, 92 (1st Cir. 2021); Tinder, 305 F.3d at 735. If the non-moving party puts forward materials that create a genuine issue of fact about a dispute's arbitrability,[8] the district court "shall proceed summarily" to trial to resolve that question. 9 U.S.C. § 4; see

---

[8] The non-moving party "cannot avoid compelled arbitration by generally denying the facts upon which the right to arbitration rests; the party must identify specific evidence in the record demonstrating a material factual dispute for trial." Soto, 642 F.3d at 72 n.2 (quoting Tinder, 305 F.3d at 735).

- 12 -

Neb. Mach. Co., Inc. v. Cargotec Sols., LLC, 762 F.3d 737, 744 (8th Cir. 2014).

Section 4's directive to proceed "summarily" requires that the district court limit the focus of the "expeditious and summary" § 4 trial to the question of whether the parties agreed to arbitrate. Moses H. Cone, 460 U.S. at 22; Boykin, 3 F.4th at 844; see also Hansen, 1 F.4th at 672 (defining "summarily" as "done or occurring without delay or formality: quickly executed" (quoting Webster's Third New International Dictionary 2289 (2002))). Although a party may seek limited discovery to support or oppose a motion to compel arbitration, Moses H. Cone, 460 U.S. at 22, the discovery -- like the trial -- must be "targeted" to the "disputed contract-formation questions," Boykin, 3 F.4th at 844; see also Guidotti, 716 F.3d at 774; Deputy v. Lehman Bros., Inc., 345 F.3d 494, 511 (7th Cir. 2003). "[R]ound after round" of discovery is inappropriate for a § 4 proceeding. Howard v. Ferrellgas Partners, L.P., 748 F.3d 975, 978 (10th Cir. 2014). Like the other courts of appeals to consider the question, we decline to mandate specific procedures and leave the conduct of the § 4 trial to the discretion of the district court. See Berkeley Cnty. Sch. Dist. v. Hub Int'l Ltd., 944 F.3d 225, 242 (4th Cir. 2019). We note, however, that the district court should not rule on the motion to compel arbitration until it resolves any factual disputes that require resolution before it can be

determined whether the parties agreed to arbitrate. See Hansen, 1 F.4th at 672; Jin v. Parsons Corp., 966 F.3d 821, 828 (D.C. Cir. 2020).

Given that the district court should evaluate a motion to compel arbitration against the summary judgment standard to determine whether a genuine dispute of fact exists regarding the parties' agreement to arbitrate, we would review such a legal conclusion de novo. Rivera-Colón, 913 F.3d at 206.

## III.

Applying Puerto Rico law, the district court concluded that Air-Con had entered into an enforceable contract with Daikin Applied even though the contract identified Daikin Industries -- Daikin Applied's parent -- as the contracting party and was counter-signed by neither Daikin Industries nor Daikin Applied. Even assuming that this written agreement constituted a final, valid, and enforceable distribution agreement between Air-Con and Daikin Industries -- the named, contracting party -- Daikin Applied is an entity separate and distinct from its parent company. See Negron-Torres v. Verizon Commc'ns, Inc., 478 F.3d 19, 27 (1st Cir. 2007) ("There is a presumption of corporate separateness that must be overcome by clear evidence that the parent in fact controls the activities of the subsidiary." (quoting Escude Cruz v. Ortho Pharm.

- 14 -

Corp., 619 F.2d 902, 905 (1st Cir. 1980))).[9]  In concluding that the written agreement between Air-Con and Daikin Industries governed the distribution relationship between Air-Con and Daikin Applied, the district court committed two legal errors.

First, the court impermissibly put the burden of disproving the existence of a valid arbitration agreement on Air-Con, the non-moving party.  The court ruled that Air-Con "failed to show" that the agreement between Air-Con and Daikin Industries did not bind Air-Con and Daikin Applied.  Air-Con, Inc. v. Daikin Applied Latin Am., LLC, 2019 WL 2606881, at *3 (D.P.R. June 25, 2019).  But the substantive law on the enforceability of arbitration agreements puts the burden on the party moving to compel arbitration to show that it is entitled to that outcome.  See Rivera-Colón, 913 F.3d at 207.  Thus, the relevant issue was not whether Air-Con "failed to show" the absence of an agreement.  Rather, Daikin Applied had to affirmatively demonstrate the existence of a binding agreement to arbitrate.

Second, the court construed the following allegations in the complaint as an admission that "Air-Con and Daikin Applied

_____

[9] Daikin Applied does not argue that Daikin Industries has such a "degree of control over [it] as to render [Daikin Applied] a mere shell" for Daikin Industries, such that the presumption of corporate separateness should be disregarded.  Escude Cruz, 619 F.2d at 905.  Hence, any argument to that effect is waived.  See United States v. Freitas, 904 F.3d 11, 23 (1st Cir. 2018).

- 15 -

operated under the guidelines of the [w]ritten [a]greement" between Air-Con and Daikin Industries:

> 6. Early in the year 2000, Air-Con established a distribution relationship with what is now Daikin Applied for the exclusive sale and distribution of air conditioners and related equipment marketed under the Daikin brand for the territories of Puerto Rico and the Caribbean.
>
> 7. According to the distribution relationship established, since the year 2000 until approximately the year 2013-2014, Air-Con had been the sole distributor of the Daikin products in Puerto Rico.

Second Am. Compl. The court interpreted these allegations as acknowledging that "Air-Con and Daikin Applied kept renewing their relationship pursuant to the terms agreed upon [i]n the [w]ritten [a]greement. Thus, . . . the contract was valid and remained valid." Air-Con, 2019 WL 2606881, at *2. In so ruling, the district court did not consider the competing narrative that Air-Con attributes to these allegations: namely, that Air-Con's relationships with Daikin Industries and Daikin Applied are governed by separate distribution agreements -- the former by the written agreement between Air-Con and Daikin Industries and the latter by an unwritten agreement. Although a plaintiff generally cannot rely on allegations in its complaint to defeat a well-supported motion for summary judgment, Fed. R. Civ. P. 56(e), the non-moving party's burden "to offer evidence supporting its own case" does not arise "unless the moving party meets its initial

- 16 -

burden" of production, <u>Carmona</u> v. <u>Toledo</u>, 215 F.3d 124, 133 (1st Cir. 2000) (citing <u>Adickes</u> v. <u>S.H. Kress & Co.</u>, 398 U.S. 144, 160 (1970)).  Where a movant supports a motion for summary judgment with only uncontroverted allegations from the complaint, as Daikin Applied did here, the court reviews the motion like a motion to dismiss.  See <u>Garcia</u> v. <u>De Batista</u>, 642 F.2d 11, 14 (1st Cir. 1981).[10]  By interpreting the complaint's allegations in a fashion favorable to Daikin Applied, the district court did not comply with the requirement to draw all reasonable inferences in favor of the non-moving party.  See <u>Zenon</u>, 924 F.3d at 615.

---

[10] The court rejected Air-Con's argument that the phrase "what is now Daikin Applied" in ¶ 6 referred to Daikin Applied's name change from Daikin U.S. Corporation to Daikin Applied instead of being a concession that Air-Con's contract with Daikin Industries also governed its relationship Daikin Applied.  Although the district court did not have to credit Air-Con's explanation for ¶ 6 -- which was presented in briefing rather than in evidentiary materials that the court may properly consider under the summary judgment standard, see <u>Bellone</u> v. <u>Southwick-Tolland Reg'l Sch. Dist.</u>, 748 F.3d 418, 424 (1st Cir. 2014) -- the district court still had to construe the allegations in the complaint in Air-Con's favor when they were not directly contravened by record evidence put forward by Daikin Applied.  <u>Garcia</u>, 642 F.2d at 14.

More generally, although we believe that the summary judgment standard is best suited to resolving motions to compel arbitration under the FAA, we acknowledge that in exceptional cases, such as this one, the parties may treat a motion to compel arbitration as a motion to dismiss by forgoing the submission of record materials and relying solely on the pleadings to support or oppose the motion.  In these exceptional cases, the district court should evaluate the motion to compel arbitration pursuant to the Rule 12(b)(6) standard, by accepting the complaint's non-conclusory factual allegations as true and drawing all reasonable inferences in favor of the non-moving party.  <u>Zenon</u> v. <u>Guzman</u>, 924 F.3d 611, 615 (1st Cir. 2019).

Without the district court's misallocation of the burden of proof and improper construal of the complaint's allegations against Air-Con, there is no basis for concluding that the relationship between Air-Con and Daikin Applied was controlled by the written agreement between Air-Con and Daikin Industries. Instead, we are left with the language of that agreement, which names Air-Con and Daikin Industries as the contracting parties. And that agreement contains a non-assignability clause that reads, in full:

> This Agreement, and all rights[,] duties[,] and obligations described herein, are personal to each party and may not be assigned or otherwise transferred in whole or part without written consent of the other party. Any such assignment or transfer of this Agreement or any part hereof shall be null and void.

(Emphases added.) The agreement also expressly states that "[n]o revision, modification[,] or amendment of this Agreement or any provision contained herein shall be effective unless agreed in writing signed by the parties." (Emphasis added.) The record contains no evidence of a written assignment of the agreement from Daikin Industries to Daikin Applied. Hence, Daikin Applied failed to meet its burden of demonstrating that the written agreement constituted a valid and enforceable agreement to arbitrate with Air-Con.[11]

---

[11] In the absence of any effective assignment of the written agreement from Daikin Industries to Daikin Applied, we leave it to

Daikin Applied has an alternative argument. It contends that, even if it may not obtain arbitration based on the written agreement between Air-Con and Daikin Industries, Air-Con agreed to arbitration when it accepted deliveries from Daikin Applied of Daikin products. Each time Air-Con received a delivery from Daikin Applied, one of Air-Con's representatives signed a "Daikin Sales Contract." And each of those sales contracts contains an arbitration clause that reads in full:

> This Contract and these Terms and Conditions constitute the entire agreement between Company [Daikin Applied] and Buyer [Air-Con] and all claims, disputes, and controversies arising out of or relating to this Contract or the breach thereof, shall, in lieu of court action, be submitted to the International Court of Arbitration ("ICC"), according to their rules and held in Miami, Florida.

The parties do not dispute that each sales contract constitutes an enforceable agreement between Air-Con and Daikin Applied, and that the above quoted arbitration provision contained in each agreement may be invoked by either party. The only remaining question, then, is whether Air-Con's claims in this case fall within the scope of the arbitration clause in the various sales contracts. See InterGen N.V. v. Grina, 344 F.3d 134, 142 (1st Cir. 2003) ("A party who attempts to compel arbitration must show . . . that the claim asserted comes within the clause's scope.").

---

the district court on remand to determine the terms of the distribution relationship between Air-Con and Daikin Applied.

- 19 -

The plain language of the arbitration provision in each sales contract provides that it covers claims "arising out of or relating to this Contract."[12]  In other words, the arbitration provision of any one sales contract governs only disputes relating to the particular sale authorized by that contract.  Here, Air-Con does not challenge any one sale or shipment of products from Daikin Applied.  Instead, Air-Con argues that Daikin Applied has impaired its distribution rights without just cause.  The alleged impairment does include some sale-specific issues such as price increases, delays in honoring purchase orders, and suspension of shipments.  But those issues are cited by Air-Con as examples of the alleged pattern of unfair practices by Daikin Applied that have substantially impaired its distribution relationship with Air-Con.  Thus, the claims alleged in the complaint are not governed by the individual arbitration clauses in each sales contract.

**IV.**

The district court erred in concluding that Air-Con agreed to arbitrate the claims at issue in this case.  Thus, we reverse the grant of the motion to compel arbitration and remand

---

[12] Under Puerto Rico law, which both parties assume applies, "[i]f the terms of a contract are clear and leave no doubt as to the intentions of the contracting parties, the literal sense of its stipulations shall be observed."  P.R. Laws Ann. tit. 31, § 3471; see also Perea v. Ed. Cultural, Inc., 13 F.4th 43, 54 (1st Cir. 2021).

for further proceedings before the district court.  Costs to Air-Con.  So ordered.